

1997 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

5-28-1997

# United States v. Sally

Precedential or Non-Precedential:

Docket 96-1864

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_1997

Recommended Citation

"United States v. Sally" (1997). *1997 Decisions.* Paper 113.
http://digitalcommons.law.villanova.edu/thirdcircuit_1997/113

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 1997 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

Filed May 28, 1997

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 96-1864

UNITED STATES OF AMERICA,

Appellee

v.

ALBERT SALLY,
a/k/a "PJ"

Albert Sally,
Appellant

ON APPEAL FROM THE
UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA
(D.C. Criminal No. 90-cr-00107-8)
District Judge: Hon. John P. Fullam

Argued: April 14, 1997

Before: SCIRICA, COWEN, and NYGAARD, <u>Circuit Judges</u>

(Opinion Filed May 28, 1997)

Peter F. Schenck (Argued)
Kristen R. Hayes
Suite 1250
Office of United States Attorney
615 Chestnut Street
Philadelphia, PA 19106

Counsel for the Appellee

Elizabeth K. Ainslie (Argued)
Ainslie & Bronson
1101 Market Street
2630 One Reading Center
Philadelphia, PA 19107

Counsel for the Appellant

**OPINION OF THE COURT**

NYGAARD, <u>Circuit Judge</u>:

Albert Sally appeals his sentence for convictions on drug charges stemming from participation in a multi-member crack conspiracy. Sally argues that the district court erred by failing to depart downward from the guideline range under Section 5H1.1 of the United States Sentencing Guidelines because of his youth when he committed the offense and evidence of his subsequent maturation. We find no error in the district court's refusal to depart under § 5H1.1. However, in light of the recent decisions in <u>Koon v. United States</u>, ___ U.S. ___, 116 S.Ct. 2035 (1996), and <u>United States v. Brock</u>, 108 F.3d 31 (4th Cir. 1997), we will vacate Sally's sentence and remand the cause to the district court for it to determine whether Sally is entitled to a downward departure based on his post-conviction rehabilitation efforts.

I.

Albert Sally was a bagger and look-out for a crack conspiracy from August 1988 through February 1989. He was seventeen years old when he became involved in the conspiracy and he turned eighteen on November 2, 1988, some three and one-half months before the conspiracy ended. As a result of his participation in the conspiracy, Sally was indicted and convicted of drug charges as well as charges related to the use of a gun in drug trafficking. He was sentenced on December 17, 1991.

More than five years later, on June 24, 1996, Sally's convictions for using a gun during drug trafficking were

dismissed pursuant to a § 2255 motion. As a consequence, his sentence was vacated and a resentencing hearing held on September 24, 1996. At the hearing, Sally's counsel requested that the district court consider a downward departure based on a combination of two factors: (1) the fact that Sally was seventeen years old during half the time he participated in the conspiracy; and (2) the fact that since he was first jailed, Sally had demonstrated increased maturity by earning a GED and an additional nine college credits. These factors, Sally's counsel argued, presented sufficiently "unusual circumstances" to permit the court to depart downward, notwithstanding the Guidelines' ordinary prohibition against considering age as a factor in deciding to depart from the Guidelines.

The district court rejected Sally's request for a downward departure, reasoning as follows:

I expressly conclude in the circumstances of this case I do not have the authority to depart downward . . .. My present conclusion is given the Guideline requirement [that] ordinarily age is not a factor for a downward departure I don't think I can find in this case it is sufficiently extraordinary to permit me to do it. Therefore, I would conclude I lack the authority to do it. If I had the authority to do it, I would seriously consider a downward departure still further not because I think the sentence originally imposed was incorrect but as sort of a reward to the Defendant for having made valiant efforts to turn his life around during the time he has been in jail.

The district court then proceeded to sentence Sally to 168 months, which was the lowest sentence available in Sally's revised Guidelines range. This timely appeal followed.

II.

On appeal, Sally presents two arguments. First, he asserts that the district court incorrectly concluded that it lacked the discretion to grant a downward departure under § 5H1.1 based on his age. Second, he contends that the facts of his case are extraordinary enough to warrant using his age as a factor to support a downward departure.

3

Before oral argument, we asked the parties to address a third issue: namely, whether post-conviction rehabilitation is an appropriate basis for a downward departure.

We review the question of whether the district court had the authority to depart downward based on the factor of age under an abuse of discretion standard. See United States v. Romualdi, 101 F.3d 971, 973 (3d Cir. 1996) ("[A] district court by definition abuses its discretion when it makes an error of law." ) (quoting Koon, 116 S.Ct. at 2047). In contrast, we lack jurisdiction to review a refusal to depart downward "when the district court, knowing it may do so, nonetheless determines that departure is not warranted." United States v. McQuilkin, 97 F.3d 723, 729 (3d Cir. 1996) (citations omitted).

III.

In § 5H1.1, the Sentencing Commission has foreclosed departures based on age in all but the most extraordinary cases. The section states in pertinent part:

Age (including youth) is not ordinarily relevant in determining whether a sentence should be outside the applicable guideline range. Age may be a reason to impose a sentence below the applicable guideline range when the defendant is elderly and infirm and where a form of punishment such as home confinement might be equally efficient as and less costly than incarceration.

We have held previously that § 5H1.1 prohibits departures based on age "except in extraordinary circumstances." United States v. Shoupe, 929 F.2d 116, 120 (3d Cir. 1991); accord United States v. Higgins, 967 F.2d 841, 845-46 (3d Cir. 1992) ("The language of the guideline policy statements indicates that only when any one of [the factors not `ordinarily relevant'] can be characterized as extraordinary does the district court have discretion to depart from the guideline's sentencing range."). These precedents are consistent with the approach established in the Guidelines themselves:

An offender characteristic or other circumstance that is not ordinarily relevant in determining whether a

4

sentence should be outside the applicable guideline range may be relevant to this determination if such characteristic or circumstance is present to an unusual degree and distinguishes the case from the "heartland" cases covered by the guidelines in a way that is important to the statutory purposes of sentencing.

U.S.S.G. § 5K2.0 (emphasis added). However, as the Commentary to § 5K2.0 stresses, "In the absence of a characteristic or circumstance that distinguishes a case as sufficiently atypical to warrant a sentence different from that called for under the guidelines, a sentence outside the guideline range is not authorized." Moreover, it is anticipated that cases where extraordinary circumstances warrant a sentence outside the guideline range "will be extremely rare." U.S.S.G. § 5K2.0, comment.

Sally concedes all this, but contends that the district court did not know that it had the authority to depart based on his age. In support of this assertion, Sally points to a statement made by the district court at the resentencing hearing: "If I had the authority to do it, I would seriously consider a downward departure . . . ." This statement, however, must be read in the context of the statement that directly preceded it: "My present conclusion is given the Guideline requirement [that] ordinarily age is not a factor for a downward departure I don't think I can find in this case it is sufficiently extraordinary to permit me to [depart downward]." (Emphasis added). Indeed, read in their entirety, the district court's comments demonstrate that it clearly understood its authority to depart downward under § 5H1.1 -- the court could depart downward only if it believed Sally's age to be a "sufficiently extraordinary" factor warranting departure under the facts of the case. However, as the district court explicitly stated for the record, it could not find that the facts of Sally's case were so "sufficiently extraordinary" as to permit his age to be used as a factor supporting a downward departure. Simply stated, the district court applied the proper legal standards under § 5H1.1 and hence, we find no error here.

Sally's second argument is equally unavailing. He contends that if age is ever to be used as a factor supporting a downward departure, then it should be used

5

under the facts of this case. As noted earlier, however, we do not have jurisdiction to review Sally's claim that the unusual facts of his case warrant a downward departure based on age. See McQuilkin, 97 F.3d at 729; accord United States v. Evans, 49 F.3d 109, 111 (3d Cir. 1995) ("[A] discretionary decision by the trial judge that a departure is not justified is not reviewable."). Indeed, having satisfied ourselves that the district court applied the proper legal standards under § 5H1.1 and fully understood the scope of its discretion to depart from the Guidelines on the basis of Sally's age, we cannot hear a challenge to the merits of the district court's discretionary decision not to depart from the Guidelines. McQuilkin, 97 F.3d at 729. Accordingly, we will not review the district court's valid exercise of its discretion to deny Sally's request for a downward departure under § 5H1.1.

IV.

In addition to Sally's arguments alleging error in the district court's application of § 5H1.1, we asked the parties to address the question of whether post-conviction rehabilitation is an appropriate basis for a downward departure. At oral argument, both sides agreed that in light of the decision in Brock, and the analysis of Koon therein, reliance on post-offense rehabilitation efforts as a factor warranting a downward departure was indeed proper. Moreover, both parties also agreed that based on the comments of the judge at the resentencing hearing, it was clear that the district court believed that it lacked the authority to depart downward based on Sally's post-conviction rehabilitation efforts. We have not previously considered whether post-conviction rehabilitation efforts may serve as a basis for a downward departure from the Guidelines. We reach that question today and conclude that they may.

We begin our analysis with the decision in Brock. Brock pleaded guilty to two counts of credit card fraud. The district court, despite expressing a desire to depart downward, refused the defendant's request for a downward departure based upon his post-offense rehabilitation efforts because it believed it lacked the authority to depart based

6

on an earlier Fourth Circuit precedent. 108 F.3d at 32-33. On appeal, the Brock court vacated the defendant's sentence, holding that "extraordinary or exceptional efforts at rehabilitation could possibly constitute a proper basis for consideration of a downward departure." Id. at 32.

In reaching its decision, the Brock court relied on the Supreme Court's opinion in Koon, which it read as support for the conclusion that the factor of "post-offense rehabilitation" had not been forbidden by the Sentencing Commission as a basis for departure under the appropriate circumstances. Id. at 33-34. Since post-offense rehabilitation was not a forbidden factor, the Brock court next sought to fit the factor into one of the other categories identified in Koon: (1) the factor was encouraged by the Commission as a basis for departure and was either (a) taken into account in the applicable guideline itself or (b) not taken into account in the guideline; (2) the factor was discouraged by the Commission as a basis for departure; or (3) the factor was unmentioned by the Commission. Id. at 34 (citing Koon, 116 S.Ct. at 2045). Ascertaining which category the post-offense rehabilitation factor occupied was important, the court noted, because "Koon instructs that different inquiries are germane depending upon which of these categories a factor falls into." Id. As the court proceeded to explain the Koon framework:

If a factor is one upon which the Commission encourages departure, and it is not taken into account by the applicable guideline, a court may exercise its discretion and depart on that basis. If an encouraged factor is taken into account in the applicable guideline, or if a factor is a discouraged one, then departure is permissible only if the factor is present to an exceptional degree or in some other way makes the case different from the ordinary case where the factor is present. Similarly, if a factor is neither encouraged nor discouraged, but listed by the Commission as one appropriately considered in applying an adjustment to the guidelines, a court may depart only if the factor is present to such an exceptional or extraordinary degree that it removes the case from the heartland of situations to which the guideline was fashioned to

7

apply. Finally, if a factor is one that is unmentioned by the guidelines, a court must, taking into consideration the structure and theory of both relevant individual guidelines and the guidelines taken as a whole, determine whether the circumstances presented are sufficient to remove the case from the heartland of the applicable guideline.

Id. at 34-35 (internal citations and quotations omitted).

Adopting the reasoning of an earlier Fourth Circuit case, the Brock court concluded that the Guidelines had already taken into account the factor of post-offense rehabilitation because the commentary to the Guidelines expressly instructed that such efforts be considered in determining a defendant's eligibility for an acceptance of responsibility adjustment pursuant to § 3E1.1. Id. at 35; see also U.S.S.G. § 3E1.1 Application Note 1(g). Therefore, the court concluded, a departure based on post-offense rehabilitation was warranted where the factor is "present to such an exceptional degree that the situation cannot be considered typical of those circumstances in which an acceptance of responsibility adjustment is granted." 108 F.3d at 35. Thus, the Brock court remanded the cause to the district court "to set forth specific factual findings concerning what efforts on Brock's part it considered exceptional enough to make the case atypical of those situations in which the acceptance of responsibility adjustment usually applies based on post-offense rehabilitation." Id. at 35 n.2.

We agree with the Brock court's reasoning and find its analysis and application of Koon persuasive. We hold that post-offense rehabilitation efforts, including those which occur post-conviction, may constitute a sufficient factor warranting a downward departure provided that the efforts are so exceptional as to remove the particular case from the heartland in which the acceptance of responsibility guideline was intended to apply. Indeed, we find no reason to distinguish between post-offense and post-conviction rehabilitation efforts in this context -- post-conviction rehabilitation efforts are, by definition, post-offense rehabilitation efforts and hence should be subject to at least equivalent treatment under the Guidelines.

8

We find additional support for our conclusion in our own cases. We have already held that "a sentencing court may depart downward when the circumstances of a case demonstrate a degree of acceptance of responsibility that is substantially in excess of that ordinarily present." United States v. Lieberman, 971 F.2d 989, 996 (3d Cir. 1992). Moreover, we recently reaffirmed this holding in Evans, 49 F.3d at 114, where we noted that "courts have recognized that a defendant's ameliorative post-arrest conduct may justify a departure even though section 3E1.1 rewards acceptance of responsibility." (citing Lieberman, 971 F.2d at 996) (internal quotations omitted). Collectively, these decisions clearly establish that when an offender demonstrates an exceptional or extraordinary degree of responsibility, a court may depart downward. In our view, post-offense or post-conviction rehabilitation efforts are factors that fall squarely within the scope of § 3E1.1 and thus exceptional or extraordinary examples of rehabilitation efforts may well warrant a downward departure.1

In this case, there is no doubt that the district court believed that it lacked the legal authority to depart downward based on Sally's post-conviction rehabilitation efforts. Indeed, as the district judge explicitly stated at Sally's resentencing hearing:

If I had the authority to do it, I would seriously consider a downward departure still further not because I think the sentence originally imposed was incorrect but as sort of a reward to the Defendant for having made valiant efforts to turn his life around during the time he has been in jail.

_____

1. In United States v. Pharr, 916 F.2d 129, 131 (3d Cir. 1990), we stated that "[s]elf-improvement is not the type of conduct contemplated by the acceptance of responsibility provisions of the guidelines." Since this decision, however, §3E1.1 has been amended specifically to include "post-offense rehabilitative efforts (e.g., counseling or drug treatment)," as an appropriate consideration in determining whether a defendant qualifies for an adjustment under the acceptance of responsibility guideline. See U.S.S.G. §3E1.1 Application Note 1(g). Therefore, it is now clear that post-offense and post-conviction rehabilitation efforts are factors taken into account by the acceptance of responsibility provision of the Guidelines.

9

Given this clear expression of the district court's willingness to consider a downward departure based on Sally's post-conviction rehabilitation efforts, as well as the government's concession at oral argument that the district judge erroneously believed he lacked the authority to depart downward based on this factor, we conclude that Sally's sentence should be vacated and the cause remanded to the district court for resentencing. On remand, the district court must determine whether Sally's post-conviction rehabilitation efforts are remarkable and indicate real, positive behavorial change. In reaching this decision, the district court should set forth specific findings concerning what post-conviction rehabilitation efforts Sally has made that demonstrate a degree of acceptance of responsibility expressed by post-offense rehabilitation that is substantially in excess of that ordinarily present.

Mindful of the Supreme Court's teaching that "[a] district court's decision to depart from the Guidelines . . . will in most cases be due substantial deference, for it embodies the traditional exercise of discretion by a sentencing court," Koon, 116 S.Ct. at 2046, we are reluctant to announce any general principles regarding what post-conviction rehabilitation efforts may be considered so extraordinary or exceptional as to warrant a downward departure. Indeed, based on the sentencing court's "institutional advantage over appellate courts in making these sorts of determinations," id. at 2047, we think it advisable to leave sentencing courts to make these determinations on a case-by-case basis, relying on the particular facts and circumstances of each case in weighing whether a particular defendant's post-conviction rehabilitation efforts warrant a downward departure. Nonetheless, we do believe that, at a minimum, there must be evidence demonstrating that a defendant has made concrete gains toward "turning his life around" before a sentencing court may properly rely on extraordinary post-conviction rehabilitation efforts as a basis for a downward departure. Unlike the usual adjustment for acceptance of responsibility where defendants may all-too-often be tempted to feign remorse for their crimes and be rewarded for it, we view the opportunity for downward departures based on extraordinary or exceptional post-conviction rehabilitation

10

efforts as a chance for truly repentant defendants to earn reductions in their sentences based on a demonstrated commitment to repair and to rebuild their lives. As such, we conclude that, as a baseline, downward departures based on extraordinary or exceptional post-conviction rehabilitation efforts are proper provided that the sentencing court makes factual findings demonstrating that the defendant has achieved real gains in rehabilitating himself and changing his behavior.

V.

In summary, we conclude that the district court has the authority to depart downward based on extraordinary or exceptional post-conviction rehabilitation efforts. Accordingly, we will vacate Sally's sentence and remand the cause to the district court for it to determine whether Sally's post-conviction rehabilitation efforts qualify him for a downward departure.

A True Copy:
Teste:

Clerk of the United States Court of Appeals
for the Third Circuit

11