**UNITED STATES of America, Plaintiff,**

v.

**Kenneth McBROOM, Defendant.**

**No. Crim. 95–502 WGB.**

United States District Court,
D. New Jersey.

Jan. 13, 1998.

---

United States Attorney's Office, Newark, NJ by Faith S. Hochberg, United States Attorney, Barry S. Pollack, Assistant United States Attorney, for U.S.

Gibbons, Del Deo, Dolan, Griffinger & Vecchione, Newark, NJ by Lawrence S. Lustberg, Mark A. Berman, for defendant Kenneth McBroom.

## MEMORANDUM OPINION

BASSLER, District Judge.

Defendant Kenneth McBroom ("McBroom") pled guilty to one count of possession of child pornography. 18 U.S.C. § 2252(a)(4)(B). The Court sentenced McBroom to 15 months' imprisonment on October 7, 1996. In the original sentencing proceeding, the Court denied McBroom's request for a downward departure based on his diminished capacity. The Court held that McBroom had not established his inability to absorb information in the usual way or to exercise the power of reason, and was therefore not entitled to a departure based on diminished capacity under U.S.S.G. § 5K2.13. *United States v. McBroom,* Crim. No. 95–502, slip op. at 10 (D.N.J. Oct. 7, 1996).

McBroom appealed the Court's ruling. The Third Circuit vacated the original sentence and remanded the case for resentencing consistent with the standards for diminished capacity set out in its opinion. *United States v. McBroom,* 124 F.3d 533 (3d Cir. 1997).

The Court originally determined that McBroom's total offense level was 13 and his criminal history category was II. Under the Guidelines, this results in a sentencing range of 15–21 months. At this resentencing, McBroom seeks downward departures based on his diminished mental capacity and his

post-offense rehabilitation efforts. For the reasons set forth below, the Court **grants** McBroom's downward departure requests.

## I. BACKGROUND

McBroom has presented evidence of his diminished capacity and his rehabilitation efforts through his own affidavit and letters from treating professionals.[1] McBroom's uncontroverted affidavit recounts a traumatic life history, starting with years of childhood sexual abuse by his father, and eventually degenerating into alcohol and cocaine addiction and an obsession with pornography. A12–A30.[2] McBroom kept the sexual abuse secret until he finally confessed it to a therapist in approximately 1984. Although McBroom managed to obtain a law degree and work as a lawyer, he continually abused alcohol and cocaine. McBroom also frequented "peep shows," called "900" sex lines, and viewed pornographic pictures. Due to his addictions, his marriage ended in divorce after seven years. A19 (McBroom Cert., ¶ 34). He went through at least four stays in drug and alcohol rehabilitation. The final stay ended in late 1993; McBroom has not had a drink or taken drugs since then. A23 (McBroom Cert., ¶ 49).

Although McBroom managed to stop drinking and taking drugs, he soon discovered the vast array of pornography, including child pornography, available on the Internet. He states that his "attraction to pornography on the computer was borne of sheer amazement at the volume of available material.... The amazement turned to fascination, and ultimately to obsession." A24 (McBroom Cert., ¶¶ 52, 53). McBroom kept his obsession secret from his girlfriend, but continued to view the pornography even after he knew that the Federal Bureau of Investigation was investigating him: "It would have been so easy (and wise) for me to simply delete all of this material from my computer's hard drive once I learned that the FBI had been to my

building, but I couldn't do it. I had to keep looking at it, knowing what was coming." A25 (McBroom Cert., ¶ 58).

McBroom was treated by a therapist, Edward R. Crowley, who specializes in the treatment of male survivors of sexual abuse, for several years. A26 (McBroom Cert., ¶ 59). He is now in weekly therapy with Richard B. Gartner, Ph.D., Director of the Sexual Abuse Program at the William Alanson White Institute for Psychiatry, Psychoanalysis, and Psychology. Defendant's Mem., Exh. A.; A26 (McBroom Cert., ¶ 60). Dr. Gartner stated in a report that McBroom has exhibited "a wide spectrum of obsessive and compulsive behaviors, including severe alcoholism and drug abuse, sexual compulsivity (particularly related to pornography) combined with sexual dysfunction, overeating, and extreme problems with managing money and debt." A38 (Report of Richard B. Gartner, Ph.D.). Dr. Gartner concluded that McBroom's compulsivity extended to viewing pornography and that this "compulsivity led to a significantly reduced mental state which contributed in a large degree to Mr. McBroom's commission of the offense for which he has been convicted." A98 (Supp. Rept. of Richard B. Gartner, Ph.D.).

McBroom has also been receiving regular medical treatment from a psychiatrist, Dr. Ronald M. Winchel, for cyclothymia, a form of bipolar disorder, and for an impulse control disorder. A26 (McBroom Cert., ¶ 61). Dr. Winchel stated in a supplemental letter that "[t]he core nature of Impulse Control Disorders is the inability to resist the urge to act in accord with the impulse.... [A]n important point about Impulse Control Disorders [is that] the urge to act is overpowering and is not fueled by logic or pursuit of pleasure. (The only apparent 'reward' is the surcease of overwhelming anxiety and agitation which accompanies the completion of the impulsive act)." Letter (12/1/97) of Ronald M. Winchel, M.D.

---

1. The Third Circuit noted that the Court was permitted to reopen to record to consider evidence of McBroom's alleged volitional incapacity. *McBroom*, 124 F.3d at 550. McBroom has submitted to this Court the Appendix of documents considered by the Third Circuit, as well as letters from his therapist, Richard B. Gartner, Ph.D., and his psychiatrist, Ronald M. Winchel, M.D.

2. Citations to "A___" refer to McBroom's Appendix submitted as part of his appeal to the Third Circuit.

**448**

McBroom also details his efforts to get his life under control since the commission of this offense. He has been sober since December 1993. He attends Alcoholics Anonymous meetings every day, and organizes speaking engagements for several AA groups in his area. He frequently speaks about his own experiences at AA chapters throughout the state. As noted above, he receives regular psychological and psychiatric treatment, and according to his doctors, he has been compliant in taking medication for his obsessive-compulsive disorder and depression. Defendant's Mem., Exh. A; Letter (12/1/97) of Ronald M. Winchel, M.D. Dr. Winchel stated that in his view, "McBroom makes no attempt to minimize his behavior.... [H]e has been consistent and unwavering in his desire to get his urges under control." *Id.*

Although McBroom voluntarily surrendered his license to practice law as a result of his guilty plea, McBroom has been employed full-time at a legal staffing firm in Fort Lee, New Jersey for the past 10 months. He also makes regular support payments to his ex-wife and visits regularly with his sons.

## II. *DISCUSSION*

At his original sentencing, McBroom sought downward departures for an overstated criminal history and extraordinary family ties, as well as diminished capacity. The Court denied all departure requests. McBroom did not appeal the denial of the criminal history and family ties departures; therefore the Third Circuit's mandate to this Court on resentencing does not involve those issues. To the extent that those departures could be raised on resentencing, however, the Court denies them for the reasons set forth in the original sentencing opinion.

### A. *Diminished Mental Capacity*

The task of the Court in this proceeding is not to determine guilt but punishment. There is much talk today about the "abuse excuse" as emasculating the criminal law. Psychology seeks to explain conduct while the law is required to judge. That conduct can be explained does not mean that it must be excused. However, if the criminal justice system is to maintain its integrity and effec-

tiveness, framing an appropriate sentence may legitimately consider factors that should not be considered on the question of guilt. One of these factors is the diminished capacity of the defendant as defined in U.S.S.G. § 5K2.13.

In imposing the original sentence on McBroom, the Court found that McBroom clearly possessed his mental and intellectual faculties and was capable of exercising the power of reason, and thus was not suffering from a significantly reduced mental capacity under U.S.S.G. § 5K2.13. A87 (Slip Op. at 10). The Third Circuit, however, held that a court evaluating a defendant's claim of significantly reduced mental capacity must consider *both* the defendant's cognitive capacity and his volitional capacity:

> A person may be suffering from a "reduced mental capacity" for the purposes of § 5K2.13 if either:
>
> (1) the person is unable to absorb information in the usual way or to exercise the power of reason; or
>
> (2) the person knows what he is doing and that it is wrong but cannot control his behavior or conform it to the law.
>
> The first prong permits sentencing courts to consider defects of cognition. The second prong permits sentencing courts to consider defects of volition.

*McBroom*, 124 F.3d at 548. Because the original sentencing opinion considered only the cognitive aspect of this test, the Third Circuit vacated the original sentence and remanded the case for resentencing.

McBroom bears the burden of establishing his significantly reduced mental capacity by a preponderance of the evidence. *Venezia v. United States*, 884 F.Supp. 919, 920 (D.N.J.1995). The requirements are stringent, as departures for diminished capacity are intended to be sparingly granted:

> [S]ection 5K2.13 requires that the reduced mental capacity be "significant" before a downward departure may be considered. Likewise, a departure, if granted, should reflect the extent to which the offender's reduced mental capacity contributed to the commission of the offense.... [A] departure may not be granted where the offense

is not "non-violent," and a departure is not warranted when the defendant's criminal history indicates a need for incarceration to protect the public. In addition, the reduction in mental capacity may not be the result of the offender's voluntary use of drugs or other intoxicants. Taken together, the requirements of section 5K2.13 are not easily met. In addition, the district courts retain their discretion to deny a downward departure even when a defendant does satisfy his burden.

*McBroom,* 124 F.3d at 548.

The Third Circuit held that McBroom's possession of child pornography was a "non-violent" offense. *Id.* at 543–44. Nor can McBroom's reduced mental capacity, if established, have been due to drug or alcohol use, as he was sober at the time. The Government does not specifically contend that McBroom is a danger to the public. It is uncontroverted that McBroom has never molested a child. His therapists agree that McBroom has never felt a compulsion to act out his sexual obsessions, and that he does not pose a threat to others. Therefore, the primary question for the Court is whether McBroom suffered from a "significantly" reduced mental capacity at the time of the offense.

■ The Court finds that McBroom's case is the rare situation justifying a downward departure. He has asserted repeatedly that he was "obsessed" and compulsively viewed the Internet pornography, even though he knew he would soon be caught. He stated that he was thinking about viewing pornography all the time, even when he was not online. Even when he learned that the FBI was investigating him, he could not bring himself to simply delete the pornographic pictures from his computer.

His therapists have also found that he exhibits obsessive and compulsive behaviors, and that his viewing of pornography on the computer is a manifestation of these compulsions. His psychiatrist, Dr. Winchel, stated in a report that McBroom suffered from an impulse control disorder, and that "[t]he factor that is common to the various Impulse Disorders, is the overwhelming quality of the urge to commit the action toward which the individual feels driven." A95–A96 (Report of Ronald M. Winchel, M.D.). He further stated that "the apparently illogic of [McBroom's] keeping incriminating evidence illustrates the behavior of an individual caught in the vise of compulsion." *Id.*

Dr. Winchel concluded that "[i]f the phrase 'significantly reduced mental state' is intended to include a reduced capacity for choice, and acting under the influence of compulsion, resultant from a psychiatric disorder, then Mr. McBroom's condition, in my view, amply fulfills that condition." *Id.* McBroom testified at the sentencing hearing about his constant feelings of agitation when he was awaiting his next opportunity to view pornography. He testified that he would create excuses to convince his girlfriend to leave their apartment so that he could view pornography. The Court finds McBroom's testimony at the sentencing hearing to be credible. Nothing he said on the stand undermined the opinions of his experts that he suffered from an impulse control disorder.

The Court agrees with the Government that there is a strong need to deter behavior that exploits children. The Court is mindful of the important public policy served by punishing possession of child pornography:

> Congress imposed punishment not only because of the harm to the children who were abused and photographed in the depictions for which the offender is punished, but also because of the harm these photographs will likely cause to other children—by encouraging viewers to engage in the abusive conduct depicted.

*United States v. Harvey,* 2 F.3d 1318, 1328 n. 12 (3d Cir.1993). In the Court's view, imposition of a custodial sentence is necessary to serve this policy.

The Court sees very little benefit, however, in imposing a lengthy sentence that would severely disrupt McBroom's therapy and rehabilitation intended to control his compulsive behaviors. Although "[d]etermining the cause of mental conditions is more a black art than a science," *United States v. Poff,* 926 F.2d 588, 595 (7th Cir.1991) (Easterbrook, J., dissenting), McBroom has presented uncontroverted evidence from his treating profes-

sionals stating that his childhood sexual abuse led to his mental conditions, including his impulse control disorder. The Court also takes into account the particular circumstances presented by McBroom's mental condition in determining an appropriate sentence:

> The criminal justice system long has meted out lower sentences to persons who, although not technically insane, are not in full command of their actions. The Sentencing Commission based its guidelines on the common practices of judges, which it attempted to make more uniform without fundamentally altering the criteria influencing sentences. Under both the desert approach to sentencing and the deterrence approach, mental states short of insanity are important. Persons who find it difficult to control their conduct do not—considerations of dangerousness to one side—deserve as much punishment as those who act maliciously or for gain.

*Id.* The Court finds that the evidence presented warrants a one-point downward departure.

### B. *Post–Offense Rehabilitation Efforts*

■ McBroom also requests, for the first time, a downward departure based on his post-offense efforts at rehabilitation. The Third Circuit recently held that post-offense efforts at rehabilitation may serve as a basis for downward departure. *United States v. Sally,* 116 F.3d 76, 79 (3d Cir.1997). Post-offense rehabilitation is considered a factor already taken into account by the Guidelines on acceptance of responsibility [U.S.S.G. § 3E1.1]. Therefore, a departure based on post-offense rehabilitation is only warranted where "the efforts are so exceptional as to remove the particular case from the heartland in which the acceptance of responsibility guideline was intended to apply." *Id.* at 80.

The Third Circuit in *Sally* stated that in order to depart downward on this basis, the district court must make factual findings that a defendant has achieved "concrete gains" in rehabilitating himself. The court

> must determine whether [defendant's] post-conviction rehabilitation efforts are remarkable and indicate real, positive behavioral change. In reaching this decision, the district court should set forth specific findings concerning what post-conviction rehabilitation efforts [defendant] has made that demonstrate a degree of acceptance of responsibility expressed by post-offense rehabilitation that is substantially in excess of that ordinarily present.

*Id.* at 81.

McBroom has made great strides in facing and treating the addictions and disorders that eventually led to commission of this offense. He is strongly committed to AA, attending meetings every day and speaking about his experiences to other members. He has been sober for four years, which appears to be the longest period of sobriety in his life in at least 20 years. He attends weekly therapy sessions to deal with his obsessive-compulsive disorder and depression. He has been compliant in taking medication to combat his mental illness, despite the unpleasant side effects. His psychiatrist stated that McBroom has sincerely committed himself to accepting responsibility and changing his life:

> In my view, Mr. McBroom makes no attempt to minimize his behavior.... [H]e has been consistent and unwavering in his desire to get his urges under control. His remorse is real and consistent. His attempts to seek treatment from me and to adhere to medication regimens (which at times may demand the tolerance of rather nasty side effects) have been consistent. I have no evidence that he has any degree of sociopathy at all. In his work with me he has come to understand my "biologized" view of his symptoms—but he has not used that as a rationale for diminishing his responsibility. He hopes that medical treatment will be of help—but he does not view it as an excuse.

Letter (12/1/97) of Ronald M. Winchel, M.D.

McBroom has also been employed full-time at a legal employment search firm for over 10 months. He often works late and on weekends. Furthermore, the vast majority of his income goes toward support payments to his ex-wife and two sons. He states, and his ex-wife confirms, that he is actually paying more than the court-ordered amount each month, in order to reduce some of his

arrearages. A26 (McBroom.Cert., ¶ 63). Finally, he has reconciled with his children after years of neglecting them in favor of alcohol, drugs and pornography.

 Taken together, McBroom's efforts show an extraordinary commitment to repair all aspects of his previously chaotic life. As the Third Circuit stated, the post-offense rehabilitation departure is intended to be "a chance for truly repentant defendants to earn reductions in their sentences based on a demonstrated commitment to repair and rebuild their lives." *Id.* at 81. McBroom's post-offense rehabilitation efforts show that he has made "concrete gains" toward rehabilitating himself. Therefore, the Court grants McBroom a two-point downward departure.

### III. *CONCLUSION*

For the foregoing reasons, the Court **grants** McBroom's downward departure requests. His total offense level is 10 and his criminal history category is II, resulting in a sentencing range under the Guidelines of 8–14 months.