UNITED STATES of America

v.

**Ralph GIOVINETTI, Defendant.**

**No. Crim.A. 98–468.**

United States District Court,
E.D. Pennsylvania.

April 4, 2000.

Eric Bentley, U.S. Attorney's Office, Philadelphia, PA, for plaintiff.

Louis T. Savino, Philadelphia, PA, for defendant.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

KATZ, Senior District Judge.

Ralph Giovinetti was convicted of one count of conspiracy to distribute and possess with the intent to distribute cocaine and one count of possession of cocaine. He now seeks a downward departure from the applicable sentencing range pursuant to U.S.S.G. §§ 5H1.4 and 5K2.0 due to his poor health. Upon consideration of defendant's motion for downward departure, the response thereto, and after a hearing, the court makes the following findings of fact and conclusions of law.

*Findings of Fact*

Mr. Giovinetti has recently been diagnosed with hepatitis C. *See* Def.Ex. A (Oct. 16, 1999 Ltr. of Curtis A. Allroy, D.O.). His treatment for this condition requires him to receive injections three times a week, to take pills twice a day for six months, and to undergo close monitoring for any side effects. *See id.* Mr. Giovinetti began the treatment in November 1999, and the latest report from Dr. Allroy indicates that after three months, "he is tolerating the medications well" and a physical examination was "essentially negative." Feb. 21, 2000 Ltr. of Dr. Allroy, filed by Order of Mar. 30, 2000.

Mr. Giovinetti also has a history of heart trouble. In May 1995, he suffered a cardiac infarction which required him to remain in the hospital for several weeks of treatment. He was diagnosed with coronary artery disease, dilated cardiomyopathy (enlargement of the heart), thalassemia minor (a hereditary disorder manifested by red blood cells that appear anemic), and obesity. *See* Def.Ex. D (hospitalization records); Gov't Ex. B (review of medical records by Geno J. Merli, M.D.). During his hospitalization Mr. Giovinetti received cardiac catheterization, angioplasty, and the insertion of two intra-coronary stents. *See* Def.Ex. D; Gov't Ex. B. Upon his release from hospital, he received follow-up care and monitoring from Dr. Mark Victor, a cardiologist, and Dr. Joseph Pandolfi, his primary care physician. *See* Def. Ex. E (treatment records of Mark Victor, M.D.).

In addition, Mr. Giovinetti suffers from depression, is prone to anxiety attacks. *See* Gov't Ex. B; Def.Ex. F (Ltr. of Robert Davidson, M.D.).[1] He has exhibited symptoms of claustrophobia on at least two occasions. *See* Def.Ex. F. His medical records indicate that he is not currently undergoing any treatment for these problems.

Drs. Victor and Allroy testified at the sentencing hearing for the defendant and Dr. Merli testified for the government. The doctors generally concurred in their assessment of Mr. Giovinetti's health in their respective areas of expertise. Based on the testimony of these physicians and the defendant's medical records, the court concludes that Mr. Giovinetti's cardiac condition is stable but he suffers from an increased risk of a secondary cardiac event due to his previous heart attack, his status as a long-time smoker, and the fact that he is a male over the age of forty. Drs. Victor and Merli agreed that the medications that Mr. Giovinetti currently takes for his heart play an important role in his continued stability. Similarly, Mr. Giovi-

---

1. As the court noted at the sentencing hearing, while it has considered Dr. Davidson's report, it does not give the report great weight, given the doctor's admission that he is not actively involved in Mr. Giovinetti's medical care. *See* Def.Ex. F.

netti is responding favorably to his treatment for hepatitis C although Dr. Allroy cautioned that he would not be able to ascertain whether the treatment was a success until it was completed in full. The hepatitis is in a relatively early stage and there has not yet been any scarring of the liver, which is a potentially serious complication of hepatitis C.

The Bureau of Prisons currently provides medical care for approximately 8,000 inmates who have been diagnosed with hepatitis C and approximately 3,750 inmates who have been diagnosed with cardiac disease. *See* Gov't Ex. C (Ltr. of Dr. Newton E. Kendig, Medical Director, Bureau of Prisons). The Bureau has reviewed Mr. Giovinetti's medical records and reports that it has "the physician staff, expert community consultant staff, and facilities to care for Mr. Giovinetti's medical and prescriptive needs." *Id.*

*Conclusions of Law*

■ The court has discretion to depart from the Sentencing Guidelines if it finds that "there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration" by the Guidelines. *See* 18 U.S.C. § 3553(b); U.S.S.G. § 5K2.0. Before a departure is permitted, the court must find that aspects of the case are "unusual enough for it to fall outside the heartland of cases in the Guideline." *Koon v. United States*, 518 U.S. 81, 98, 116 S.Ct. 2035, 135 L.Ed.2d 392 (1996); *see also United States v. Sally*, 116 F.3d 76, 78–79 (3d Cir.1997). Where a factor is a discouraged basis for departure, the court should only depart if the factor is "present to an exceptional degree or in some other way makes the case different from the ordinary case in

which the factor is present." *United States v. Iannone*, 184 F.3d 214, 226 (3d Cir.1999).

The Sentencing Guidelines provide that physical condition is a factor that is "not ordinarily relevant" in determining whether a sentence should be outside the applicable guideline range. U.S.S.G. § 5H1.4; *see also Iannone*, 184 F.3d at 227 n. 10 (noting that physical condition is a discouraged basis for departure). "However, an extraordinary physical impairment may be a reason to impose a sentence below the applicable guideline range." U.S.S.G. § 5H1.4. If the Bureau of Prisons can adequately provide for a defendant's health care needs, courts have been reluctant to grant departures on the basis of ill health. *See, e.g., United States v. LeBlanc*, 24 F.3d 340, 348–49 (1st Cir.1994) (holding no departure warranted for a defendant who suffered from coronary artery disease requiring on-going medical care where there was no showing that his life would be shortened by virtue of incarceration or that the Bureau of Prisons would be unable to accommodate him); *United States v. Martinez–Guerrero*, 987 F.2d 618, 620 (9th Cir.1993) (holding that the ability of the Bureau of Prisons to care for a defendant is a relevant factor in determining whether departure on the grounds of physical infirmity is justified).

■ In this case, although the court agrees that the Mr. Giovinetti's health is poor, his ill health is not so extraordinary as to warrant a departure. His more serious complaints, coronary artery disease and hepatitis C, do not necessitate exceptional medical treatment and can be addressed adequately by the Bureau of Prisons.[2] Mr. Giovinetti's cardiac condition is

---

**2.** Dr. Merli, the government's medical expert, reports that no treatment is necessary for Mr. Giovinetti's thalassemia minor, *see* Gov't Ex. B., and the defendant has not submitted evidence to the contrary. The medical documentation in support of Mr. Giovinetti's complaints of depression and related mental ailments is somewhat cursory and does not give any indication that his mental condition is so

troublesome as to warrant a downward departure. *See* U.S.S.G. § 5H1.3 ("Mental and emotional considerations are not ordinarily relevant in determining whether a sentence should be outside the applicable guideline range."); *see also United States v. McBroom*, 124 F.3d 533, 538–39 (3d Cir.1997) (holding that while mental and emotional conditions are not ordinarily relevant considerations, a

stable, although certain risk factors render him vulnerable for a secondary cardiac event. *See, e.g.* Def.Ex. E; Gov't Ex. B. The defendant will complete his course of treatment for hepatitis C before his self-surrender date. Moreover, the hepatitis is in a relatively early stage, and none of the medical evidence indicates that the defendant's condition in this regard is in any way extraordinary. Given the Bureau of Prison's experience in caring for inmates who have similar health problems, its assurance that it can adequately accommodate Mr. Giovinetti's medical needs, and the lack of medical evidence indicating that Mr. Giovinetti's ailments are exceptional, the court finds no basis upon which to depart from the applicable guideline range.

*Conclusion*

In sum, a review of the medical evidence reveals that Mr. Giovinetti's health problems do not constitute an "extraordinary physical impairment" such that a departure under either 5H1.4 or 5K2.0 is warranted.

defendant suffering from a "significantly reduced mental capacity" may warrant a