# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

STATE OF DELAWARE,   :

          :  ID No. 9807019438

  v.        :  In and For Kent County

          :

CATHERINE W. CULP,   :

          :

  Defendant.    :

## MEMORANDUM OPINION AND ORDER

Submitted: March 1, 2018
Decided: March 22, 2018
Corrected: March 26, 2018

Dennis Kelleher, Esquire, DEPARTMENT OF JUSTICE, Dover, Delaware, *for the State*.

William T. Deely, Esquire, OFFICE OF DEFENSE SERVICES, Dover, Delaware, *for the Defendant*.

Primos, N.



This case presents an issue which is easily stated but difficult to resolve: whether the Court should grant a plea of leniency.[1] The State of Delaware Board of Parole (hereinafter the "Board"), upon application of the Department of Correction (hereinafter the "Department"), has recommended to this Court that it reduce the sentence of Catherine W. Culp (hereinafter "Ms. Culp"), who was convicted of the murder of Lee Hicks (hereinafter "Mr. Hicks"). In reaching its decision, the Court must contemplate a variety of considerations, both practical—the extent of Ms. Culp's rehabilitative efforts and whether she poses a danger to the community; and esoteric—when does leniency serve the ends of justice?

## I.     FACTUAL AND PROCEDURAL BACKGROUND

At approximately one o' clock in the morning on July 29, 1998, Ms. Culp frantically banged on the door of Corinthian and Kimberly Cuffee. When Mr. Cuffee opened the door, Ms. Culp told him "I need help . . . he is hurt, I need somebody to come call 911." They called the police, and Ms. Culp described her involvement in Mr. Hicks's death: "He told me to give him his gun, and I gave it to him. And the gun went off and it shot him in the back." Police arrived at the Cuffee residence and Ms. Culp directed the officers to Mr. Hicks's home, just a few houses down the street. Inside, police discovered Mr. Hicks lying dead in his bed. Investigators later discovered that Mr. Hicks had died from a single, close range, gunshot wound.

In December of 1999, this Court convicted Ms. Culp of murder in the first degree and possession of a firearm during the commission of a felony. Ms. Culp

---

[1] A motion that seeks the reduction of a lawfully imposed sentence is "essentially a plea for leniency . . . and is addressed to the sound discretion of the trial court." *United States v. Robinson*, 344 F. Supp. 956, 959 (D. Del. 1972), *aff'd*, 474 F.2d 1337 (3d Cir. 1972).

appealed. The Supreme Court of Delaware reversed the convictions on the basis of a breach of the Delaware Rules of Evidence, and a new trial was held. In July of 2001, Ms. Culp was again convicted, this time of murder in the second degree and possession of a firearm during the commission of a felony. She was sentenced effective July 29, 1998, to 25 years in prison. For almost eighteen years, beginning with her initial incarceration in July 1998, Ms. Culp remained continuously incarcerated at Delores J. Baylor Women's Correctional Institution (hereinafter "WCI").

During these years, Ms. Culp exhibited exemplary behavior and commitment to rehabilitation. She achieved an Associates of Applied Science Degree in Marketing, graduating with honors, and completed courses qualifying herself to teach other inmates on a variety of subjects, including G.E.D. classes, Thresholds, and drug education classes. She served as an educational tutor at WCI, completed numerous computer courses, achieved a State of Delaware computer operator certificate, and attained abilities in Spanish, culinary arts, women's health, public speaking, dancing, and floral design.

On April 18, 2016, this Court modified Ms. Culp's sentence, citing her extraordinary rehabilitation. Ms. Culp was released for time served and moved to Florida to reside with her brother and sister, Douglas Wiggins and Angela Wiggins. During this time, she complied with the requirements of her probation in all respects. She obtained and held employment, received a driver's license, saved enough money to purchase her own car, and joined a church.

Ms. Culp's freedom was, however, short-lived. On December 8, 2016, the Supreme Court reversed this Court's decision to modify her sentence, holding that the Superior Court is not empowered to grant pleas for leniency *sua sponte* based

3

upon rehabilitative efforts, if they are filed more than 90 days after sentencing.[2] The Supreme Court indicated that the Superior Court may only grant such a plea upon the application of the Department, filed with the Board pursuant to 11 *Del. C.* § 4217—as the Court has received here.[3] In so holding, the Supreme Court emphasized the "important role" that Section 4217 assigns the Department and the Board in assuring "community safety and public welfare in the evaluation of claims of successful rehabilitation."[4]

Upon receiving this news, Ms. Culp voluntarily paid her way back to Delaware and submitted herself to the custody of the Department on January 5, 2017. Since returning to WCI, Ms. Culp has continued to exhibit the indicia of substantial rehabilitation.

On July 18, 2017, the Department applied with the Board, pursuant to Section 4217, to reduce Ms. Culp's sentence, stating that "[w]e feel that [she] is not a danger to herself or the community at this time. Ms. Culp demonstrated during her reprieve that she is willing to be a productive part of her community." On December 4, 2017, the Board submitted its recommendation for sentence reduction to this Court, reporting that the Department had shown good cause for sentence reduction in that Ms. Culp was fully rehabilitated, and that she would not pose a risk to anyone if released. The Board voted four to one to modify Ms. Culp's sentence by suspending the remainder of her Level V incarceration for two years of Level III probation.

Due to reduction of her sentence for "good time," Ms. Culp is set to be released on March 15, 2019.

---

[2] *State v. Culp*, 152 A.3d 141, 146 (Del. 2016).
[3] *Id.*
[4] *Id.*

4

## II. ARGUMENTS OF PARTIES

As previously indicated, the Department asserts that Ms. Culp's release "into the community would not constitute a substantial risk to the community or [her]self." Further, Ms. Culp has "demonstrated rehabilitation through appropriate program participation."

The Department interviewed Ms. Culp in connection with this application. When asked about the cause of Mr. Hicks's death, Ms. Culp said, "Mr. Hicks asked her to get his gun from the dresser . . . . Ms. Culp stated that she never handled a gun before. Her judgment was blurred due to the amount of alcohol she consumed and she was playing with the gun when it accidentally went off shooting Mr. Hicks." The Department further probed Ms. Culp on the issue of remorse, and she responded that "she knows that what happened that night was entirely her fault" and that she "feels for the loss Mr. Hicks's family had to endure because of her actions." In the Department's view, "Ms. Culp appears to be truly remorseful for what happened to Mr. Hicks and his family."

At the hearing held with regard to this matter on February 13, 2018, counsel for Ms. Culp emphasized her accomplishments and good behavior, which have been recounted *supra*, and argued that she was genuinely remorseful. Counsel attributed Ms. Culp's continued insistence that the killing was accidental to the fact that the traumatic experience and her intoxication may impede her ability to recall precisely what happened. Counsel conceded that the 25-year sentence was appropriate when imposed, but argued that Ms. Culp is a completely different person today.

The State's concise written response reads, in its entirety, as follows:

On July 29, 1998 Catherine Culp shot Lee Hicks in the back killing him. She was arrested and convicted of Murder in the Second Degree and Possession of a Firearm During the Commission of a Felony. She was sentenced to a total of 25 years in prison for her senseless killing of Mr. Hicks. The State's position is that this was an appropriate sentence at the time and remains appropriate in light of the serious and unprovoked nature of this offense. Therefore, the State remains opposed to the reduction pursuant to 11 *Del. C.* § 4217.

The State's attorney also remarked at the hearing that Mr. Hicks's family opposes the motion, and indicated that the seriousness of the crime weighs against this Court's granting of the motion.

## III. STANDARD

As previously indicated, 11 *Del. C.* § 4217 empowers the Superior Court to modify a prisoner's sentence upon receipt of an application filed by the Department with the Board. Such a modification may be granted "for good cause shown which certifies that the release of the defendant shall not constitute a substantial risk to the community or the defendant's own self."[5] In this context, good cause is defined as including, but not limited to, "rehabilitation of the offender, serious medical illness or infirmity of the offender and prison overcrowding."[6] Rehabilitation is in turn defined as "the process of restoring an individual to a useful and constructive place in society especially through some form of vocational, correctional, or therapeutic retraining."[7] While the legislature has instructed this Court to consider the factors of

---

[5] 11 *Del. C.* § 4217(b).
[6] § 4217(c).
[7] § 4217(h).

good cause and risk to the community, this Court is nonetheless empowered with "discretion [to] grant or deny the application for modification of sentence."[8]

## IV. DISCUSSION

### A. Good Cause and Danger to the Community

This Court's practical considerations are straightforward. The Board and the Department both represent to the Court that Ms. Culp has shown good cause for her release and that she is not a threat to anyone. Ms. Culp's rehabilitation, as explained *supra* and in this Court's previous order correcting her sentence, is evident. She has demonstrated extraordinary self-improvement efforts through her participation in classes, courses, certifications, community involvement, and service to others. Additionally, her positive disciplinary record and nine months spent in Florida, which passed without incident, demonstrate that she is not a threat to the community.

The Court considers evidence of remorse to be relevant to Ms. Culp's rehabilitation, and whether she poses a continuing danger to the community.[9] The Department, after interviewing Ms. Culp, opined that she was "truly remorseful for what happened to Mr. Hicks and his family."

The Court notes that from the initial 911 call to the interview with the Department, Ms. Culp has continuously asserted that Mr. Hicks's death was an accident, and denied that she ever intended to kill him. However, Ms. Culp's

---

[8] § 4217(e); *Robinson*, 344 F. Supp. At 959. In her supplemental briefing regarding this issue, Ms. Culp agreed that "[t]he ultimate choice of whether to grant or deny such an application lies in the discretion of the Superior Court Judge."

[9] *See Pickens v. State*, 850 P.2d 328, 337 (Okl. Cr. 1993) (holding that "[e]vidence of lack of remorse is pertinent to a finding that the defendant is a continuing threat to society"); *State v. Ramos*, 2003 WL 21186032 at*3 (Ohio Ct. App. 2003) (finding that "failure of the defendant to acknowledge or accept responsibility for the conduct further is an indicia of the danger posed to the public").

7

continued insistence that the death was accidental does not necessarily indicate a lack of remorse or denial of responsibility. Ms. Culp's conflicting accounts of Mr. Hicks's death may reflect a lack of memory. The record shows that Ms. Culp was highly intoxicated at the time, and the Court understands that trauma or stress can affect a person's recollection.

The jury in Ms. Culp's second trial determined that she was guilty of second degree murder, *i.e.*, that she killed Mr. Hicks in a manner that exhibited a "cruel, wicked, and depraved indifference to human life."[10] Nonetheless, while Ms. Culp may characterize her legal responsibility for Mr. Hicks's differently than did the jury, she does admit that "what happened that night was entirely her fault." Additionally, Ms. Culp's substantial efforts toward rehabilitation indicate her appreciation for the impermissibility of her prior conduct. In *United States v. Sally*,[11] the Third Circuit explained that, with regards to the effect of remorse in the analogous context of sentencing, actions speak louder than words: "[u]nlike the usual adjustment for acceptance of responsibility where defendants may all-too-often be tempted to feign remorse for their crimes and be rewarded for it, we view the opportunity for downward departures based on extraordinary or exceptional post-conviction rehabilitation efforts as a chance for truly repentant defendants to earn reductions in their sentences based on a demonstrated commitment to repair and to rebuild their lives."[12]

The Court considers one circumstance particularly demonstrative of Mr. Culp's complete rehabilitation: the fact that, upon being informed of the Supreme Court's December 2016 decision, she returned voluntarily, and at her own expense, to Delaware to serve out the remainder of her sentence. The Court finds that Ms.

---

[10] 11 *Del. C.* § 635.
[11] 116 F.3d 76 (3d Cir. 1997).
[12] *Id.* at 81.

Culp has been fully restored as a useful and constructive member of society and poses no danger to the community.

### B. The Court's Discretion

The Court alluded earlier to the esoteric consideration of whether justice is served by Ms. Culp's serving the remaining year of her sentence.

The Supreme Court of Delaware has recently stated that, in our tradition of criminal justice, incarceration is needed "to fulfill objectives such as retribution and even loftier goals such as rehabilitation."[13] The Court has already discussed the issue of rehabilitation and found that Ms. Culp is indeed rehabilitated. Additional incarceration would, in the Court's view, do nothing to further that goal. Moreover, the Court views as critical the fact that the Department—an agency entrusted by statute with responsibility for "treatment, rehabilitation and restoration of offenders as useful, law-abiding citizens within the community"—is itself applying for this relief.[14]

The topic of retribution, however, has not yet been discussed. In the law, it is viewed as a justly deserved punishment.[15] This ancient legal principle, the *lex talionis*, holds that "[e]veryone is to be punished alike in proportion to the gravity of his offense or to the extent to which he has made others suffer."[16]

During the hearing on this matter, the State rightly emphasized the seriousness of Ms. Culp's offenses to the Court. The murder of another human being is a heinous

---

[13] *Rauf v. State*, 145 A.3d 430, 441 (Del. 2016). *See also State v. Leroy*, 1993 WL 19629, at *8 (Del. Super. Jan. 14, 1993) ("[t]he philosophical underpinnings of the criminal law is part retributive, part rehabilitative").
[14] 11 *Del. C.* 6502(a).
[15] Retribution, Black's Law Dictionary (10th ed. 2014).
[16] Morris R. Cohen, *Reason and Law* 53 (1961).

crime. To this day, Mr. Hicks's family members continue to bear the sorrow and pain of his tragic death, and mourn the future that was taken from him. It is, therefore, just and appropriate that the punishment for Ms. Culp be severe.

However, punishment cannot be measured only by the length of time spent in prison. The extent and reality of Ms. Culp's punishment thus far—her "daily pain and suffering inside prison"—are beyond easy quantification.[17] The Court has a few indicators: Ms. Culp's Department interviewer reported that Ms. Culp "feels for the loss Mr. Hicks's family had to endure because of her actions" and that her heart "aches" because of his death.[18] The Court notes that Ms. Culp has been separated from her four children and three grandchildren during her imprisonment, and that she has been deprived of taking a greater role in their lives. It was surely a painful experience for Ms. Culp to be returned to custody after tasting nine months of freedom, believing that her days of incarceration were behind her.

The Court is also skeptical that an additional year under the custody of the Department would have further significant punitive value for Ms. Culp. During her time in prison, Ms. Culp has seized every opportunity to transform her incarceration—intended, in part, as a medium of punishment—into the means of restoring her dignity and integrity. A friend of Ms. Culp, Ms. Catherine P. Weaver, wrote to the Court on this matter, indicating that Ms. Culp is a "person who seeks to find meaning in every experience." The Court believes that Ms. Culp has found the meaning of her imprisonment.

---

[17] *See* Robert Blecker, *Haven or Hell? Inside Lorton Central Prison: Experiences of Punishment Justified*, 42 Stan. L. Rev. 1149, 1152 (1990) ("[t]he reality of each criminal's punishment consists in the experience of that punishment").

[18] *See* Nigel Walker, *Punishment, Danger, and Stigma* 129 (1980) (observing that remorse may be relevant to the Court's retributive objectives because a remorseful defendant may have already punished himself enough).

## V.  CONCLUSION

In its 2016 decision, the Supreme Court recognized Section 4217 as "the appropriate mechanism through which a defendant may pursue sentence modification based upon rehabilitation."[19] That mechanism has now been correctly employed. The Court finds that the objectives of retribution and rehabilitation have been accomplished, and that neither goal will be meaningfully furthered by Ms. Culp's continued incarceration. Accordingly, the Court exercises its discretion to grant the application of the Department to reduce the sentence of Catherine W. Culp, as approved by the Board, having confirmed good cause and lack of any danger to the community.

**WHEREFORE**, for the foregoing reasons, the application for sentence modification is **GRANTED**. The balance of Ms. Culp's Level V sentence for her conviction of murder in the second degree is suspended after time served for two (2) years of Level III probation. The balance of Ms. Culp's Level V sentence for her possession of a firearm during the commission of a felony conviction is suspended after time served for two (2) years at Level III, to run concurrent. The Level III supervision may be transferred through interstate compact. All other aspects of Ms. Culp's sentence are to remain the same.

**IT IS SO ORDERED.**

Noel Eason Primos, J.

---

[19] *State v. Culp*, 152 A.3d 141, 146 (Del. 2016).