**UNITED STATES of America,**

v.

**David G. BOCKIUS.**

**No. CRIM.A.97–0250–01.**

United States District Court, E.D. Pennsylvania.

Aug. 9, 2001.

David G. Bockius, Fort Dix, NJ, pro se.

A. Charles Peruto, Sr., Philadelphia, PA, Richard J. Guiliani, Philadelphia, PA, Edward C. Meehan, Jr., Philadelphia, PA, for Defendant.

Richard Goldberg, U.S. Atty's Office, Philadelphia, PA, for U.S.

## MEMORANDUM AND ORDER

HUTTON, District Judge.

Presently before this Court are the Government's Post–Appeal Sentencing Memorandum (Docket No. 78), the Defendant's Post–Appeal Sentencing Memorandum (Docket No. 79), the Government's Reply Memorandum on Re-sentencing (Docket No. 81), the Defendant's Response to Government's Reply Memorandum on Re-sentencing (Docket No. 82), and the Government's Supplemental Memorandum on Re-sentencing (Docket No. 83).

### I. BACKGROUND

The Defendant, David Bockius, was the president and one of four principals of an insurance brokerage firm. In the summer of 1995, he stole a significant sum of money from the brokerage and its clients and fled to the Cayman Islands. On July 16, 1997, the Defendant pled guilty to wire fraud, in violation of 18 U.S.C. § 1343; transporting the proceeds of fraud and theft between the United States and the

Cayman Islands, in violation of 18 U.S.C. § 2314; and money laundering, in violation of 18 U.S.C. § 1956(a)(2)(B). He conceded the stolen money was subject to forfeiture as a result of his money laundering under 18 U.S.C. § 982(a) and (b)(1).

At his sentencing on March 25, 1998, the Defendant objected to his sentence being based upon U.S.S.G. § 2S1.1 because he claimed that his behavior fell outside the heartland of money laundering guideline. After denying his motion for a downward departure, the Court sentenced the Defendant to 48 months imprisonment, followed by three years of supervised release, restitution of $581,500, and a special assessment in the amount of $150. On September 24, 1998, the Defendant filed a motion to vacate, set aside, or correct sentence under 28 U.S.C. § 2255 alleging, among other things, ineffective assistance of counsel for failure to file an appeal on the heartland issue. As a result of his successful § 2255 motion, the Defendant was resentenced on November 8, 1999. Relying on the Third Circuit's opinion in *United States v. Smith*, 186 F.3d 290 (3d Cir. 1999), the Court found the Defendant's actions fell outside the heartland of the money laundering guideline. *See id.* at 300. Therefore, the Court employed the fraud guideline and sentenced the Defendant to 36 months imprisonment, followed by three years of supervised release, restitution of $581,500, and a special assessment in the amount of $150. The Government appealed the Court's sentence. While the appeal was pending, the Defendant completed his term of incarceration and was released. The driving force behind the Defendant's resentencing was the Third Circuit's statement in *Smith* that "[u]ltimately, we conclude that the Sentencing Commission itself has indicated that the heartland of § 2S1.1 is the money laundering activity connected with extensive drug trafficking and serious crime."

*See Smith*, 186 F.3d at 300. The Court interpreted this language to mean that activity which was not "connected with extensive drug trafficking and serious crime" fell outside of the heartland of § 2S1.1. On appeal, the Third Circuit held that this is a misinterpretation of *Smith* stating that in addition to those activities, a heartland analysis should also address whether the money laundering involved "a defendant knowingly conduct[ing] a financial transaction to conceal tainted funds or funnel them into additional criminal conduct." *See United States v. Bockius*, 228 F.3d 305, 312 (3d Cir.2000). Therefore, the Third Circuit remanded the Defendant's case for a heartland analysis and resentencing. The Court now addresses these issues.

## II. *DISCUSSION*

### A. *Application of § 2S1.1*

Before applying a particular guideline section, a sentencing court must engage in the following two-step inquiry: "(1) Does the designated guideline apply or is the conduct 'atypical' in comparison to that usually punished by the statute of conviction; and (2) If the conduct is 'atypical,' which guideline is more appropriate?" *Bockius*, 228 F.3d at 311. "Atypical money laundering conduct is conduct outside the heartland of § 2S1.1." *Id.* In determining whether conduct is outside the heartland of the money laundering guideline, the Court "should address whether defendants engaged in money laundering in which 'the laundered funds derived from serious underlying criminal conduct such as a significant drug trafficking operation or organized crime' or in typical money laundering in which a defendant knowingly conducted a financial transaction to conceal tainted funds or funnel them into additional criminal conduct." *Id.* at 312. In

this case, the Defendant embezzled funds from his business, took the proceeds to the Cayman Islands where he formed a corporation under a false name, planned on depositing the funds in bank accounts under different names in amounts small enough to avoid reporting requirements, bought a house in the name of the corporation, and claims that the remaining funds were taken by a person to whom the Defendant was planning to give his money in an attempt to render it untraceable. *See id.* at 313. As is clear, the Defendant took many steps which were separate from the underlying fraud to disguise the proceeds of the fraud. *See Smith,* 186 F.3d at 300 (finding that money laundering was an " 'incidental by-product' " of the kickback scheme). There seems little doubt that the Defendant's activities qualify as "typical money laundering in which a defendant knowingly conducted a financial transaction to conceal tainted funds." .

As a result, the Court finds that the money laundering guideline applies to the Defendants case. Absent the granting of a downward departure, the Defendant will be sentenced at an offense level of 21 (taking into account the acceptance of responsibility reduction) with a criminal history category of III. That will result in a sentencing guideline range of 46–57 months, or as little as 10 months longer than his previous sentence.

**B.** *Defendant's Motion for a Downward Departure*

■ The Defendant moves for a downward departure pursuant to § 5K2.0 of the United States Sentencing Guidelines and 18 U.S.C. § 3553(b)(West 2001). "Under 18 U.S.C. § 3553(b), the sentencing court may impose a sentence outside the range established by the applicable guidelines, if the court finds 'that there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines that should result in a sentence different from that described.' " § 5K2.0. This provision had provided an opportunity for downward departures based upon post-conviction, post-sentencing rehabilitative efforts. *See United States v. Sally,* 116 F.3d 76, 81 (3d Cir.1997). Effective November 1, 2000, the Sentencing Guidelines were amended to prohibit consideration of post-sentencing rehabilitative efforts when resentencing a defendant. *See* U.S.S.G. § 5K2.19. However, all of the parties agree that the amendment does not apply to the defendant's case as it did not become effective until after his offense was complete. *See United States v. Yeaman,* 248 F.3d 223, 228 (3d Cir.2001). Therefore, it is appropriate for the Court to consider post-conviction rehabilitative efforts of the Defendant when resentencing him. *See Sally,* 116 F.3d at 80.

■ In *Sally,* the Third Circuit held "that post-offense rehabilitation efforts, including those which occur post-conviction, may constitute a sufficient factor warranting a downward departure provided that the efforts are so exceptional as to remove the particular case from the heartland in which the acceptance of responsibility guideline was intended to apply." *Id.* When considering a downward departure on this basis, the Court must look at the facts and circumstances of each case on a case-by-case basis. *See id.* at 81. Departures based upon extraordinary post-conviction rehabilitative efforts represent an opportunity for defendants to earn a reduction by demonstrating they have made a "commitment to repair and rebuild their lives." *Id.* Before granting such a departure, the Court should be convinced that the "defendant has made concrete gains toward 'turning his life around.' " *Id.*

The Defendant pled guilty to wire fraud, transporting stolen property in interstate and foreign commerce, and money laundering. *See* July 16, 1997 Tr. at 5:23–25, 6:1–5. The activity constituting the bulk of the Defendant's criminal conduct occurred over a two month period of time. During that period, the Defendant had certain psychological and medical concerns and was abusing cocaine and alcohol. *See* July 16, 1997 Tr. at 4:12–25, 5:1–10. After a short stay in the Cayman Islands, the Defendant returned to the Philadelphia area. *See* November 8, 1999 Tr. at 24:23–25. Upon his return, the Defendant began seeing his therapist twice a week and confronted his cocaine problem by attending Narcotic Anonymous. *See* November 8, 1999 Tr. at 24:14–20. In addition, the Defendant obtained employment and eventually turned himself in to the Federal Bureau of Investigation (FBI). *See* November 8, 1999 Tr. at 24:3–13. However, during that time the Defendant still struggled with alcohol problems as evidenced by two driving under the influence arrests in 1996. *See* March 25, 1998 Tr. at 13:2–5.

While incarcerated, the Defendant made excellent strides in becoming a positive, contributing member of the prison community. During his incarceration, the Defendant attempted to tackle some of the causes of his personal problems by taking part in Narcotics Anonymous, Alcoholics Anonymous, and by continuing sessions with his therapist. *See* November 8, 1999 Tr. at 20:8–15, 24:17–19. While at the Federal Correction Institution (FCI) at Fort Dix, the Defendant actually supervised the institution's reading program which obviated the need for the prison to provide a teacher. *See* November 8, 1999 Tr. at 19:12–15. In addition, he took part in a counseling group and became a mentor for other prisoners. *See* November 8, 1999 Tr. at 19:16–19. This type of active and responsible role is particularly impor-

tant for this Defendant as he has a history of depression, and drug and alcohol dependency.

Since that time, the Defendant has continually strived to maximize his rehabilitative efforts. After his release from prison, the Defendant has continually fought his problems with addiction by attending Narcotics Anonymous two nights a week. *See* Def.'s Post–Appeal Sent. Mem. at 7. These efforts have been successful to this point as the Defendant has tested negative in every weekly urinalysis performed since he has been on supervised release. *See* Def.'s Post–Appeal Sent. Mem. at 7. More importantly, the Defendant has sought out and obtained employment. *See* Def.'s Post–Appeal Sent. Mem. at 6–7. First, the Defendant worked as a waiter at a local Philadelphia restaurant while searching for job opportunities more commensurate with his prior work history. *See* Def.'s Post–Appeal Sent. Mem. at 6. Then, at the time of the re-sentencing hearing, the Defendant was about to start a new job as a Senior Account Executive at a personnel placement agency. *See* Def.'s Post–Appeal Sent. Mem. at 6–7.

When determining if these steps are extraordinary, the Court must look at each situation "on a case-by-case basis, relying on the particular facts and circumstances of each case...." *Sally,* 116 F.3d at 80. Seldom does the Court have the opportunity at re-sentencing to get a complete glimpse of the Defendant's potential for rehabilitation. The Court has had that opportunity in this case. While in prison, the Defendant strove to be a positive force by helping others. In doing so, he was rewarded and shown to be a model prisoner. In addition, during his incarceration and after his release, the Defendant has worked to overcome the drug problem that has afflicted him. Since the offense at issue, the Defendant has dealt directly

with three of the underlying issues surrounding his criminal conduct, his drug use, his medical concerns, and his mental health. *See United States v. Kane*, 88 F.Supp.2d 408, 413 (E.D.Pa.2000)(granting downward departure when defendant "demonstrated a genuine commitment to repairing his life which has been sadly damaged by his long-time abuse of drugs and alcohol"). By putting an emphasis on staying "clean," the Defendant has increased his chances for successfully maintaining the gainful employment he has obtained. In doing so, the Court finds that the Defendant has made the requisite demonstration that he is committed to repairing and rebuilding his life. *See United States v. Turner*, No. CRIM.A.95–520–01, 2000 WL 307355, at *2 (E.D.Pa. Mar.24, 2000)(treatment for drug problem and continued employment showed commitment to a permanent positive transformation). It is clear that working in responsible employment and remaining drug free are "concrete gain[s]" toward turning his life around. *See Turner*, 2000 WL 307355, at *2. "As a now sober, hardworking, and dependable member of society, [the Defendant] has demonstrated a positive and lasting transformation in his behavior that is extraordinary." *See United States v. Ortiz*, 100 F.Supp.2d 295, 300 (E.D.Pa.2000).

For the foregoing reasons, the Court grants the Defendant's motion for a downward departure pursuant to U.S.S.G. § 5K2.0.

### III. *CONCLUSION*

The Defendant, David Bockius, pled guilty to offenses which fall within the heartland of the money laundering guideline U.S.S.G. § 2S1.1. As a result, he faces a sentence based upon an offense level of 21 (taking into account the acceptance of responsibility reduction) with a criminal history category of III. However-

er, the Court finds that Mr. Bockius has demonstrated a commitment to repairing and rebuilding his life that is extraordinary. Mr. Bockius' commitment to self-improvement, battle with a drug dependency, and his successful attempt to obtain gainful employment represent extraordinary and concrete efforts to turn his life around. As a result, the Court grants his motion for a downward departure.

Because the Court has granted the Defendant's motion for a downward departure, the Court will depart by 4 levels and sentence the Defendant based upon an offense level of 17 (taking into account the acceptance of responsibility reduction) with a criminal history category of III. Therefore, the Defendant is sentenced to 36 months imprisonment, followed by three years of supervised release, restitution of $581,500, and a special assessment in the amount of $150.

An appropriate Order follows.

### *ORDER*

AND NOW, this 9th day of August, 2001, upon consideration of the Government's Post–Appeal Sentencing Memorandum (Docket No. 78), the Defendant's Post–Appeal Sentencing Memorandum (Docket No. 79), the Government's Reply Memorandum on Re-sentencing (Docket No. 81), the Defendant's Response to Government's Reply Memorandum on Re-sentencing (Docket No. 82), and the Government's Supplemental Memorandum on Re-sentencing (Docket No. 83), IT IS HEREBY ORDERED that:

(1) the Defendant's motion for a downward departure is **GRANTED**;

(2) the sentence the Defendant based upon an offense level of 17, a criminal history category of III; and

(3) the Defendant is sentenced to 36 months imprisonment, followed by

three years of supervised release, restitution of $581,500, and a special assessment in the amount of $150.