**Brian HEATH, Defendant Below, Appellant,**

v.

**STATE of Delaware, Plaintiff Below, Appellee.**

**No. 550, 2008.**

Supreme Court of Delaware.

Submitted: Oct. 14, 2009.
Decided: Nov. 4, 2009.

---

5. 2000 WL 724683, at *1 (Del. May 18, 2000) (Table).

6. *Id.*

7. *Id.*

11. *Id.*

Charles M. Oberly, III, Drinker Biddle & Reath, LLP, Wilmington, DE, for Intervenor on behalf of appellant.

John Williams, Department of Justice, Dover, DE, for appellee.

Before STEELE, Chief Justice, HOLLAND, BERGER, JACOBS and RIDGELY, Justices constituting the court en banc.

STEELE, Chief Justice:

The Governor, as the Board of Pardons recommended, unconditionally pardoned Brian Heath for Second Degree Unlawful Sexual Contact. We address, on first impression, whether that pardon permits Heath to deregister as a sexual offender. The trial judge decided that the pardon statute's silence regarding registration differentiates its effect from expunction, which would extinguish Heath's Registry requirements. Because the Board and Governor review "propensity for recidivism" before recommending and granting an unconditional pardon and a pardon restores all civil rights, no basis remains for

mandating continued registration as a sex offender. Therefore, we **REVERSE** the judgment of the Superior Court.

## FACTUAL AND PROCEDURAL HISTORY

On March 29, 2000, a grand jury indicted Heath for Fourth Degree Rape.[1] Heath pleaded guilty to Second Degree Unlawful Sexual Contact.[2] A judge sentenced Heath to two years in prison, suspended for probation. Heath did not appeal his conviction and the State discharged him after he successfully completed his period of probation on August 8, 2002. As a result of his conviction, Heath became a Tier II sexual offender, required to continue disclosing certain personal information to the Sex Offender Registry.

Heath petitioned the Delaware Board of Pardons for relief. The Board held a hearing on Heath's petition for an unconditional pardon and the Attorney General did not object. The Board found that Heath no longer posed a threat to the public and recommended that the Governor grant him an unconditional pardon. Based on the State's failure to object and Heath's inability to find employment without a pardon and relief from the civil disability imposed on him as a result of his conviction, the Governor granted Heath an unconditional pardon.

Heath then filed *pro se,* and the State opposed, a motion in Superior Court, asserting that the Governor's pardon relieved him of future compliance with the Sex Offender Registry. A judge issued a bench ruling denying Heath's petition, Heath appealed and the State filed a motion to affirm. On March 26, 2009, we denied the motion to affirm and scheduled

1. 11 *Del. C.* § 770. Heath, when he was 19 years old, had consensual sex with a girl, who was less than 16 years old.

2. 11 *Del. C.* § 768.

an *en banc* hearing on this question of first impression.

## STANDARD OF REVIEW

We review these parties' questions of law, requiring statutory interpretation, *de novo*.[3]

## ANALYSIS

### 1. The Governor could have, but did not, conditionally pardon Heath.

Delaware citizens granted the Governor the power to pardon in Article VII § 1 of the Delaware Constitution. The Delaware Constitution also creates and empowers a Board of Pardons, consisting of the Chancellor, Lieutenant–Governor, Secretary of State, State Treasurer, and Auditor of Accounts.[4] The Board recommends to the Governor whether he should pardon the applicant unconditionally, conditionally, or not at all. The Board may attach to its recommendation, and the Governor may attach to her pardon, any condition deemed appropriate.[5]

Applicants seeking a recommendation from the Board must fulfill several statutory requirements and establish that they no longer threaten the public.[6] The applicant must give the sentencing judge, the Attorney General, the Chief of Police where the crime occurred, and the Superintendent of the Delaware State Police the opportunity to oppose his petition. The petition must include numerous forms and documents including a criminal history and, in some cases, a psychological evaluation. The Board then holds an open hearing at which any victim of the crime(s) for which the petitioner seeks a pardon has the opportunity to testify.

Article 3, § 7 of the Delaware Constitution requires that a representative of the Attorney General's office attend all Board of Pardons sessions and provide the Board with information relating to the crime. The Attorney General must also notify victims and adverse parties of their opportunity to testify at the hearing, during which the Attorney General may oppose the relief requested or recommend conditions limiting the relief sought. Where, as here, the Attorney General did not object to the applicant's request for an unconditional pardon, we will assume that the Attorney General had no objection to the Governor's pardoning the applicant unconditionally.

Because the Governor did not expressly condition her pardon, we must determine the interplay of the statutes creating the Registry and those delineating a pardon's effect. The General Assembly intended the Registry "to protect the public from the danger and propensity for recidivism of convicted sex offenders."[7] The effect-of-a-pardon statute provides that "an unconditional pardon by the Governor shall have the effect of fully restoring all civil rights."[8]

 The parties agree that registration creates a civil disability tantamount to the restriction of a civil right.[9] The State

3. *Burrell v. State,* 953 A.2d 957, 960 (Del. 2008).

4. Del. Const. art. VII, §§ 1, 2.

5. *In re McKinney,* 138 A. 649 (Del.Super.1927). *See also Schick v. Reed,* 419 U.S. 256, 266, 95 S.Ct. 379, 42 L.Ed.2d 430 (1974) (pardoning power flows from the Constitution alone, not from any legislative enactments).

6. 11 *Del. C.* §§ 4361–4364.

7. *Helman v. State,* 784 A.2d 1058 (Del.2001).

8. 11 *Del. C.* § 4364.

9. The Registry requires that a registered sex offender notify members of the public who are likely to encounter the sex offender. Offenders must send notice to accessible public

contends that while registration creates a civil disability, the Registry nonetheless serves an important societal function. The petition and hearing process for obtaining a pardon requires consideration of potential recidivism. An unconditional pardon will not be recommended should the Board hearing produce evidence of the possibility of recidivist conduct. "[P]ropensity for recidivism," the fundamental premise underlying the registry, cannot justify continuing the registry requirement when an unconditional pardon constitutes a finding that the petitioner poses no potential threat to the public. The statutes, therefore, can be harmonized. Because an unconditional pardon cannot be granted unless the Board and Governor find no propensity for recidivism, an unconditional pardon extinguishes the underlying premise for sex offenders' registration obligations.

### 2. The Registry Statute does not supersede the Pardon Statute.

■■■■ The parties dispute whether silence in the Registry and pardon statutes permits or prohibits Heath from seeking relief from the Registry's requirements. If inconsistencies exist between two statutes, we will presume the General Assembly's intent that the more specific, later-enacted statute limits the effect of the former.[10] If the statutes narrowly conflict,

we will try to give effect to both, unless the General Assembly expressly intended the latter to repeal the former.[11]

The State argues that the Registry statute precludes the pardon statute from superseding its underlying policy without an express, legislative limitation.[12] In *State v. Skinner*,[13] we held that "the pardon may have forgiven [the offender's] conviction, [but] it did not obliterate the public memory of the offense ... a pardon does not erase guilt. It 'does not create any factual fiction that [the] conviction had not occurred to justify expunction of his criminal record.' "[14] The State would have us distinguish a pardon from an expunction when considering the Registry's purpose. Although the State asserts that the Registry remains as a mere "public memory of the offense," it incompatibly concedes that mandatory listing on the Registry creates a severe civil disability. The Registry requirement affects individual liberty more profoundly than simply serving as a recording mechanism for determining prior offenders.

In *Fletcher*, we held that an expunction extinguishes registration requirements. We gave effect to both the juvenile expunction and the Registry statutes, although they narrowly conflicted. We found that the General Assembly did not expressly intend for the Registry statute

---

facilities through various media including door-to-door appearances, mail, email, and telephone. The Registry also makes available to the public searchable records that provide the convicted sex offense and most of the information required by 11 *Del. C.* § 4120(d)(2). Heath claims that continued sex offender registration inhibits his ability to find employment and residence.

10. *State v. Fletcher*, 974 A.2d 188, 193 (Del. 2009).

11. *Id.*

12. "This section shall be effective notwithstanding any law, rule or regulation to the contrary." 11 *Del. C.* § 4121(q).

13. 632 A.2d 82 (1993).

14. *Id.* at 85 (quoting *United States v. Noonan*, 906 F.2d 952, 960 (3d Cir.1990)); *see also State v. Peterson*, 369 A.2d 1076, 1081 (Del. 1976) ("While a pardon removes all legal punishments and disabilities attached to a conviction, we hold that it cannot erase the fact that the offender was convicted of an infamous crime....").

to supersede the expunction statute.[15] We concluded that it made no sense for an individual who has no record of a sexual offense, as a result of expunction, to register as a sexual offender.[16]

 The pardon statute states that "[e]xcept as otherwise provided by the Delaware Constitution, or *expressly* by any provision of the Delaware Code or any court rule, the granting of an unconditional pardon by the Governor shall have the effect of fully restoring all civil rights to the person pardoned." [17] Thus, a statute supersedes the pardon statute only if the later-enacted statute expressly so provides.

 Because the Registry statute does not so "expressly" provide, we see no reason to distinguish between the effects of a pardon and an expunction with respect to Registry requirements. We note that petitioners' burden to prove, both to the Board of Pardons and to the Governor, that they no longer threaten society as a sexual offender, fulfills the Registry's purpose—to protect the public against recidivism. Here, after a hearing during which the Board considered the issue of a continued threat to society, the Board recommended that the Governor issue an unconditional pardon. The Attorney General at that hearing acquiesced in the determination. The Governor made no contrary finding, accepted the recommendation, and granted an unconditional pardon. What basis in fact or law remains to justify continuing Registry protection? An *unconditional* pardon restores all civil rights, including removal from the Sex Offenders Registry.

## CONCLUSION

For the foregoing reasons, we **REVERSE** the judgment of the Superior Court.

---

**15.** *Fletcher,* 974 A.2d at 194–95.

**16.** *See id.* at 195.

**17.** 11 *Del. C.* § 4364 [emphasis supplied].