IN THE SUPREME COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| STATE OF DELAWARE, | § | |
| | § | No. 249, 2016 |
| Plaintiff Below, | § | |
| Appellant, | § | Court Below: |
| | § | |
| v. | § | Superior Court of the |
| | § | State of Delaware |
| CATHERINE W. CULP, | § | |
| | § | Cr. I.D. No. 9807019438 |
| Defendant Below, | § | |
| Appellee. | § | |

Submitted: November 16, 2016
Decided: December 8, 2016

Before **STRINE**, Chief Justice, **VALIHURA** and **SEITZ**, Justices.

Upon appeal from the Superior Court. **REVERSED**.

Sean P. Lugg, Esquire (*argued)*, Delaware Department of Justice, Wilmington, Delaware for Appellant.

Bernard J. O'Donnell, Esquire and William T. Deely, Esquire (*argued)*, Office of Public Defender, Wilmington, Delaware for Appellee.

**VALIHURA**, Justice:

Pending before this Court is the State's appeal from the Superior Court's April 18, 2016 Opinion and Order (the "Order")[1] granting Catherine Culp's ("Culp") second *pro se* motion for sentence modification,[2] which the Superior Court reviewed as a Motion for Review of Sentence (the "Motion").[3] The Superior Court held that Culp's rehabilitative efforts demonstrated "beyond cavil extraordinary circumstances" justifying reduction of her sentence pursuant to Superior Court Criminal Rule 35(b).[4] On appeal, the State argues that the Superior Court abused its discretion in granting the Motion, which the State contends was barred as repetitive and untimely.

For the reasons set forth below, we REVERSE the Superior Court's Order granting Culp's Motion.

## I.    RELEVANT FACTS AND PROCEDURAL BACKGROUND

On July 28, 1999, Culp's boyfriend, Lee Hicks, died after being shot in the back. Culp was arrested and charged with Hicks's murder. On December 8, 1999, after a two-week trial, a Superior Court jury found Culp guilty of murder in the first degree and possession of a firearm during the commission of a felony ("PFDCF"). On December 17, 1999, the Superior Court imposed a life sentence for the first-degree murder charge and five years of incarceration for PFDCF. On appeal, this Court determined that the trial court had improperly excluded Culp's statements made to a 911 dispatcher and reversed

---

[1] *State v. Culp*, 140 A.3d 435 (Del. Super. 2016) [hereinafter "*Culp III*, 140 A.3d at __"].
[2] Mot. for Modification / or Consideration for 4217, *State v. Culp*, No. 9807019438 (Del. Super. Oct. 5, 2015) [hereinafter "Mot. at B__"], *available at* B1-5.
[3] *See Culp III*, 140 A.3d at 436.
[4] *Id.* at 438.

the judgment, remanding the case to the trial court.[5]

On July 30, 2001, a Superior Court jury, on retrial, acquitted Culp of Murder in the First Degree, but found her guilty of the lesser-included offense of Murder in the Second Degree and PFDCF. On August 1, 2001, the Superior Court sentenced Culp to twenty years of imprisonment at Level V for the murder, and five years' imprisonment at Level V for the firearm offense. On direct appeal, this Court affirmed Culp's convictions and sentence on January 27, 2003.[6]

On April 22, 2003, Culp filed her first *pro se* motion for modification of sentence, which was denied on May 29, 2003. On March 11, 2009, Culp filed a *pro se* motion for postconviction relief, which the Superior Court denied on July 13, 2009. On October 5, 2015, Culp filed the Motion, claiming that she participated in every program offered to her and was thereby rehabilitated. The programs she participated in include: achieving an associate's degree, teaching courses to other inmates, tutoring, and completing courses in computing, Spanish, women's health, public speaking, culinary arts, dancing, and floral design.[7] In her Motion, Culp noted that no additional programs were available to stimulate her mind and that she was remorseful for her actions.

On April 18, 2016, the Superior Court granted Culp's Motion, finding that Culp had "demonstrated beyond cavil extraordinary circumstances, in the clearest manner that

---

[5] *Culp v. State*, 766 A.2d 486, 491 (Del. 2001) [hereinafter "*Culp I*, 766 A.2d at __"].
[6] *Culp v. State*, 2003 WL 193536, at *3 (Del. Jan. 27, 2003) [hereinafter "*Culp II*, 2003 WL 193536, at *__"].
[7] *Culp III*, 140 A.3d at 438.

Rule 35(b) could conceive, for a reduction of her sentence."[8] The Superior Court found that the "effect of Culp's tremendously ambitious efforts is that she has not only exposed herself to, but excelled in the acquisition of, skills that will make her a particular benefit to the community upon her reintegration."[9] At the time of her Motion, Culp had served approximately 17 years of her 25-year sentence. The Superior Court modified her sentence to 20 years at Level V for murder, suspended after 12, and 8 years for PFDCF at Level V, suspended after 5, followed by 2 years at Level III supervision.

On appeal, the State contends that the Superior Court abused its discretion by considering Culp's repetitive and untimely motion for reduction of sentence, contrary to the plain language of Rule 35 and case law interpreting the Rule. The State argues that program participation does not constitute "extraordinary circumstances" that would excuse the untimely Motion. Culp responds that a prior Rule 35 motion does not necessarily bar subsequent motions and that her rehabilitation constitutes extraordinary circumstances sufficient to overcome the timeliness bar in Rule 35(b).

## II.    ANALYSIS

This Court reviews a Superior Court's grant of a motion for modification of sentence for abuse of discretion.[10] "An abuse of discretion occurs when a court has exceeded the bounds of reason in view of the circumstances or so ignored recognized

---

[8] *Id.*
[9] *Id.* at 437.
[10] *State v. Lewis*, 797 A.2d 1198, 1202 (Del. 2002).

4

rules of law or practice to produce injustice."[11]  "The applicability or construction of a statute or court rule is a question of law and is subject to *de novo* review."[12]

Superior Court Criminal Rule 35(b) permits the Superior Court to "reduce a sentence of imprisonment on a motion made within 90 days after the sentence is imposed."[13]  The Superior Court "will not consider repetitive requests for reduction of sentence."[14]  A motion is "repetitive" as that term is used in Rule 35(b) when it is preceded by an earlier Rule 35(b) motion, even if the subsequent motion raises new arguments.[15]  Rule 35(b) does not set forth any exception to the repetitive motion bar.

Rule 35(b) provides that "[t]he court will consider an application made more than 90 days after the imposition of sentence only in extraordinary circumstances or pursuant to 11 *Del. C.* § 4217."[16]  Thus, two exceptions permit the Superior Court to consider motions filed more than 90 days after sentencing.  *First*, the Superior Court may consider an untimely motion if "extraordinary circumstances" exist.[17]  "In order to uphold the finality of judgments, a heavy burden is placed on the defendant to prove extraordinary circumstances when a Rule 35 motion is filed outside of ninety days of imposition of a sentence."[18]  Recently, this Court stated in *Diaz* that extraordinary circumstances are circumstances that "'specifically justify the delay;' are 'entirely beyond a petitioner's

---

[11] *Harper v. State*, 970 A.2d 199, 201 (Del. 2009) (quoting *Culp I*, 766 A.2d at 489) (internal quotation marks omitted).
[12] *Lewis*, 797 A.2d at 1199 (citation omitted).
[13] Super. Ct. Crim. R. 35(b).
[14] *Id.*
[15] *See, e.g.*, *Valentine v. State*, 2014 WL 7894374, at *2 (Del. Dec. 31, 2014) (describing a second Rule 35(b) motion, which raised a new argument, as "untimely and repetitive").
[16] Super. Ct. Crim. R. 35(b).
[17] *Id.*
[18] *State v. Diaz*, 2015 WL 1741768, at *2 (Del. Apr. 15, 2015).

5

control;' and 'have prevented the applicant from seeking the remedy on a timely basis.'"[19]

*Second*, the Superior Court can modify a sentence more than 90 days after sentencing pursuant to 11 *Del. C.* § 4217.[20] Section 4217 permits the Superior Court to modify a sentence solely on the basis of an application filed by the Department of Correction ("DOC") "for good cause shown which certifies that the release of the defendant shall not constitute a substantial risk to the community or the defendant's own self."[21] Good cause includes, but is not limited to, "rehabilitation of the offender, serious medical illness or infirmity of the offender and prison overcrowding."[22] For purposes of Section 4217, "rehabilitation" is defined as "the process of restoring an individual to a useful and constructive place in society especially through some form of vocational, correctional, or therapeutic retraining."[23] Such applications by the DOC "shall be filed with the Board of Parole."[24] Because the DOC did not file such an application here, Section 4217 cannot justify the Superior Court's modification of Culp's sentence.

We conclude that the Superior Court abused its discretion in considering Culp's Motion, which was both repetitive and untimely. The Motion was repetitive because it was Culp's second request for modification of her sentence. Ignoring Rule 35(b)'s

---

[19] *Id.* (quoting *Lewis*, 797 A.2d at 1203-05 (Steele, J., dissenting)).
[20] Super. Ct. Crim. R. 35(b).
[21] 11 *Del. C.* 4217(b).
[22] 11 *Del. C.* 4217(c).
[23] 11 *Del. C.* 4217(h).
[24] 11 *Del. C.* 4217(d)(1). Section 4217(d) sets forth procedures regarding such applications which may include, in appropriate cases, a hearing held by the Board of Parole, after written notice of such hearing to the Attorney General's office. "Only in those cases where the Board of Parole by a majority vote recommends a modification of the sentence shall the application be submitted to the [Superior] Court for consideration." 11 *Del. C.* 4217(d)(4).

command that the court "not consider repetitive requests for reduction of sentence" was an abuse of discretion.

Further, Culp's Motion was also time barred. As the Superior Court recognized, Culp filed the Motion more than 90 days after the imposition of her sentence.[25] The Superior Court found that Culp's rehabilitation constituted "extraordinary circumstances" that justified review of the untimely Motion. However, this Court has held that "participation in educational and rehabilitative programs, while commendable, does not, in and of itself, constitute 'extraordinary circumstances' for purposes of Rule 35(b)."[26] It appears that the Superior Court read our statement in *Allen v. State*[27]—that "Allen's prison record is not sufficient to establish 'extraordinary circumstances'"[28]—to "not preclude" the possibility that a prison record might constitute extraordinary circumstances.[29] But, the Superior Court's reading of *Allen* is contrary to established precedent, as well as our recent decision in *Diaz*.[30]

---

[25] *See* Mot. at B2.

[26] *DeShields v. State*, 2012 WL 1072298, at *1 (Del. Mar. 30, 2012) (citing *Morgan v. State*, 2009 WL 1279107, at *1 (Del. May 11, 2009)); *see also Callahan v. State*, 2016 WL 4437955, at *1 (Del. Aug. 22, 2016) (same); *Triplett v. State*, 2008 WL 802284, at *1 (Del. Mar. 27, 2008) ("While participation in rehabilitative programs is commendable, it is well-settled that such participation, in and of itself, is insufficient to merit substantive review of an untimely motion for sentence reduction." (citation omitted)).

[27] 2007 WL 1519030 (Del. May 25, 2007).

[28] *Id.* at *1 (stating that a defendant's "prison record [was] not sufficient to establish 'extraordinary circumstances' under Superior Court Criminal Rule 35(b) and thus excuse [his] failure to comply with the 90-day limitations period of Rule 35(b)" (footnotes omitted)).

[29] *Culp III*, 140 A.3d at 437 ("The Court certainly did not preclude a prison record's establishing extraordinary circumstances. The fair reading is quite to the contrary. Allen's record was (probably woefully) not enough, but the process and the possibility exist.").

[30] *See Diaz*, 2015 WL 1741768, at *2 (describing "extraordinary circumstances" as "those which 'specifically justify the delay;' are 'entirely beyond a petitioner's control;' and 'have prevented

The Superior Court justified its holding, in part, by its observation that rehabilitation is at least one objective underlying Delaware's penal system.[31] Although the Superior Court may be correct that rehabilitation is a goal animating the programs offered to inmates in Delaware's correctional institutions, Rule 35(b) is not the proper vehicle for seeking modification based on rehabilitation. The plain language of Rule 35(b) states that the rule should be construed in conjunction with 11 *Del. C.* § 4217, which allows for a modification of a sentence only upon application by the DOC for "good cause" shown. "Good Cause" under Section 4217 expressly includes, among other things, "rehabilitation of the offender." An application made by the DOC pursuant to Section 4217 must also certify that the release of the defendant shall not constitute a substantial risk to the community or to the defendant's own self. Thus, Section 4217 is the appropriate mechanism through which a defendant may pursue a sentence modification based upon rehabilitation.

Employing Rule 35(b) as a mechanism for reducing sentences based upon an inmate's rehabilitative efforts would undermine Section 4217 and the important role it assigns to the DOC and the Board of Parole in seeking assurances of community safety and public welfare in the evaluation of claims of successful rehabilitation. Further, to allow an untimely, repetitive Rule 35(b) motion based upon the "extraordinary

---

the applicant from seeking the remedy on a timely basis'" (quoting *Lewis*, 797 A.2d at 1203-05 (Steele, J., dissenting))).

[31] *Culp III*, 140 A.3d at 437 ("If the singular purpose of a sentence were to punish, perhaps no legitimate discussion would exist. Noting that the place of Culp's incarceration is Baylor Women's *Correctional* Institution, and that Rule 35(b) exists at all, the inevitable conclusion is that rehabilitation is at least one aspect of the Delaware penal system." (emphasis in original)).

circumstances" language of that rule would end-run Rule 35(b)'s procedural bars and risk overwhelming the courts and undercutting the finality of sentences. The notion that successful rehabilitation constitutes "extraordinary circumstances" justifying a filing after 90 days is also undercut by Rule 35(b)'s reference to Section 4217. Precisely because the Rule refers to a statute contemplating a vehicle for rehabilitated inmates to obtain an early release makes untenable the argument that successful rehabilitation constitutes an extraordinary circumstance. Rather, it shows that successful rehabilitation was a non-extraordinary circumstance that the drafters of Rule 35(b) well understood.

Finally, Article VII of the Delaware Constitution of 1897 vests the Governor, upon recommendation of the Board of Pardons, with sole power to grant reprieves, commutations of sentence, and pardons.[32] The Board, comprised of the Chancellor, Lieutenant-Governor, Secretary of State, State Treasurer, and Auditor of Accounts, "recommends to the Governor whether he should pardon the applicant unconditionally, conditionally, or not at all."[33] Applicants must establish that they no longer threaten the public. The Board must hold "an open hearing at which any victim of the crime(s) for which the petitioner seeks a pardon has the opportunity to testify."[34] This executive clemency process is a second vehicle through which a defendant may pursue sentence modification based on extraordinary rehabilitative efforts.[35] Thus, based on our

---

[32] Del. Const. art. VII, § 1; *see also Lewis*, 797 A.2d at 1205 (Steele, J., dissenting).
[33] *Heath v. State*, 983 A.2d 77, 80 (Del. 2009).
[34] *Id*.
[35] We note that Culp pursued commutation of her sentence from the Board of Pardons but was denied. *See* Transcript of Review of Sentence at 7:17-19, *State v. Culp*, No. 9807019438 (Del. Super. Apr. 14, 2016) ("It's my understanding that at the Board of Pardons hearing that was held

9

construction of the relevant statute and rules, we conclude that, after 90 days, a plea for leniency based upon rehabilitative efforts must proceed through one of these two routes—either section 4217 or through the Board of Pardons process.

## III.   CONCLUSION

Because the Superior Court's modification of Culp's sentence ignored the plain language of Rule 35(b) and established precedent, we conclude that the Superior Court abused its discretion.  As such, we REVERSE the Superior Court's April 18, 2016 Order.

---

the attorney that was representing her at the time, they attempted to relitigate the trial . . . ."); *see also* Oral Argument at 18:24, 20:30, *State v. Culp*, No. 249, 2016 (Del. Nov. 16, 2016), https://livestream.com/accounts/5969852/events/6615658/videos/142038302/player.