**IN THE SUPERIOR COURT OF THE STATE OF DELAWARE**

| | | |
|---|---|---|
| STATE OF DELAWARE, | ) | |
| | ) | |
| v. | ) | I.D. No. 1411003111 |
| | ) | Cr. A. Nos. IN14-11-0961, etc. |
| KRISHAN D. DILLARD, | ) | |
| Defendant. | ) | |

Submitted: August 22, 2024
Decided: October 29, 2024
Written Decision Withdrawn, Corrected, and Reissued: November 8, 2024

*Upon Defendant Krishan D. Dillard's*
*Motions for Correction of Sentence and for Sentence Reduction,*
**DENIED**.

## ORDER

This 8th day of November, 2024, upon consideration of Defendant Krishan D. Dillard's Motion for Correction of an Illegal Sentence (D.I. 95), Motion for Reduction of Sentence (D.I. 96), the State's responses to those motions (D.I. 97 and 99), and the record in this matter, it appears to the Court that:

**FACTUAL AND PROCEDURAL BACKGROUND[1]**

(1) In January 2015, a grand jury indicted Defendant Krishan D.

---

[1] The relevant factual and procedural background of Mr. Dillard's crimes and prosecution have been recounted in two of this Court's prior decisions and is taken almost verbatim therefrom without repetition of all of their internal citations. *See* D.I. 66 (order denying Mr. Dillard's first motion to reduce sentence); *State v. Dillard*, 2019 WL 118437, at *1-2 (Del. Super. Ct. Jan. 4, 2019) (order denying postconviction relief).

Dillard for attempted murder first degree, first-degree assault, two counts of home invasion, two counts of second-degree burglary, three counts of felony reckless endangering, endangering the welfare of a child, nine related counts of possession of a deadly weapon during the commission of a felony (PDWDCF), and possession of a deadly weapon by a person prohibited.

(2)    These multiple offenses arose from an attack that occurred on November 6, 2014. Early that morning, Mr. Dillard illegally entered an "on-again, off-again" girlfriend J.B-J.'s apartment. He carried with him a box of blue latex medical gloves. He donned a pair and armed himself with a kitchen knife. Mr. Dillard then went to J.B-J.'s bedroom and attacked her while she slept. J.B-J. woke with Mr. Dillard on top of her. Mr. Dillard first stabbed her in the stomach then sliced her throat. J.B-J.'s 17-year-old sister, M.S., was in an adjoining bedroom and was awoken by J.B-J.'s screams as J.B-J. struggled and fought off Mr. Dillard. Mr. Dillard continued stabbing and slashing. M.S. went to her sister's aid and Mr. Dillard turned his attention to her. After stabbing and slashing M.S., Mr. Dillard tucked the knife in his pocket and fled the apartment. As a result of Mr. Dillard's attack, J.B-J. underwent emergency surgical repair of her liver, pancreas, neck and shoulder; she lost her gall bladder; and she suffered numerous other less-serious injuries. M.S. was stabbed and slashed in the leg; her wounds required

-2-

suturing.

(3)    Both J.B-J. and M.S. positively identified Mr. Dillard as their attacker.  He was arrested six days later in Maryland.

(4)    At final case review, Mr. Dillard pleaded guilty to attempted first-degree murder, second-degree assault, felony reckless endangering, and PDWDCF.  He did so in exchange for dismissal of the remaining charges in this indictment, dismissal of the charges from a second unrelated indictment, and the State's favorable sentencing recommendation.

(5)    Mr. Dillard's sentencing occurred several months later on July 22, 2016, after a pre-sentence investigative report was prepared.   He was sentenced:  (a) for attempted murder—to 25 years at Level V, suspended after he serves 20 years imprisonment, for decreasing levels of supervision with certain treatment conditions; (b) for assault second degree—to eight years at Level V (to which 11 *Del. C.* § 4214 was applied); (c) for PDWDCF—to five years at Level V; and (d) for reckless endangering—to five years at Level V suspended in its entirety for a concurrent probated term.[2]

(6)    Mr. Dillard's 33-year period of unsuspended imprisonment is comprised, in part, of three separate minimum terms of incarceration that must

---

[2]    D.I. 62 (modified sentencing order issued to reflect the earlier effective date agreed upon by the parties).

be imposed under a combination of Delaware's attempted first-degree murder, second-degree assault (with a habitual-criminal enhancement), and PDWDCF statutes; those three separate minimum terms as applied in the peculiar circumstances of Mr. Dillard's case, total 21 years.[3] The remaining 12 years the Court imposed as an exercise of its own sentencing judgment.

(7)    Mr. Dillard filed no direct appeal from his conviction or sentence.[4] But he earlier docketed a *pro se* motion under Superior Court Criminal Rule 35(b) requesting reduction of his prison term.[5] That application was considered on its merits and denied.[6]

### MR. DILLARD'S RULE 35(a) MOTION (D.I. 95)

(8)    In Mr. Dillard's view, his sentence is "illegal" and in need of

---

[3]    *See* DEL. CODE ANN. tit. 11, §§ 636, 531, and 4205(b)(1) (2014) (attempted first-degree murder is a class A felony carrying a statutory minimum of 15 years at Level V); *id.* at §§ 1447 and 4205(b)(2) (PDWDCF is a class B felony carrying a statutory minimum of 2 years at Level V); *id.* at §§ 612(d), 4201(c) and 4205(b)(4) (assault second degree is a class D violent felony with a statutory maximum of eight years imprisonment); *see also* DEL. CODE ANN. tit. 11, § 4214(b) (2016) (providing under the then-recently-revised habitual-criminal sentencing provisions that one who had been thrice previously convicted of felonies and is thereafter convicted of a Title 11 violent felony must receive a minimum sentence of not less than one-half of the statutory maximum penalty otherwise provided for the triggering Title 11 violent felony that forms the basis of the State's habitual criminal petition). The State had sought, and the Court applied, a §4214 enhancement only to the second-degree assault count.

[4]    Though he did later unsuccessfully seek postconviction relief through this Court's Criminal Rule 61. *State v. Dillard*, 2019 WL 118437 (Del. Super. Ct. Jan. 4, 2019) (denying Mr. Dillard's first timely Rule 61 motion on its merits).

[5]    D.I. 63.

[6]    D.I. 66.

correction because the Court *should* have sentenced him to a minimum term of four years of imprisonment for the second-degree assault conviction that was enhanced by application of the then-very-recently amended version of the Habitual Criminal Act that was in effect on the date of his sentencing rather than the prior version in effect at the time of his crimes and plea.

(9)     Criminal Rule 35(a) permits this Court to correct an illegal sentence "at any time."[7] Relief under Rule 35(a) is available when, *inter alia*, the sentence imposed:   exceeds the statutorily-authorized limits; omits a term required to be imposed by statute; is uncertain as to its substance, or is a sentence that the judgment of conviction did not authorize.[8] "Relief may be warranted under Rule 35(a) to correct a court's possible misimposition of non-suspended imprisonment as a minimum-mandatory term in a sentence."[9]

(10)    Mr. Dillard is somewhat misguided on both the law and the facts he argues in his Rule 35(a) motion.   His complaint stems from his misapprehension of which version of the Habitual Criminal Act—old or

---

[7]   Super. Ct. Crim. R. 35(a) ("*Correction of sentence.* -- The court may correct an illegal sentence at any time . . .").

[8]   *Brittingham v. State*, 705 A.2d 577, 578 (Del. 1998).

[9]   *State v. Palmer*, 2022 WL 16641898, at *7 (Del. Super. Ct. Sept. 27, 2022) (citing *Jones v. State*, 2021 WL 4098967, at *2 (Del. Sept. 8, 2021) (noting that relief in the form of resentencing may be warranted to correct a court's mistaken imposition of non-suspended imprisonment as a minimum-mandatory term to a sentence when such minimum term did not in fact apply)).

new—should be applied to his sentence and which version actually was applied to his sentence.[10]

(11) Mr. Dillard committed his crimes in November of 2014. He entered his plea in November of 2015. And he was sentenced on July 22, 2016.

(12) Three days prior to Mr. Dillard's sentencing, substantive revisions to Delaware's Habitual Criminal Act were enacted.[11] So, at Mr. Dillard's sentencing the parties and Court discussed the applicability of the then-brand-new habitual-criminal sentencing provisions.[12] The parties and Court agreed to the application of the new provisions to the only conviction for which the State sought habitual-criminal sentencing: the second-degree assault count.[13] This benefitted Mr. Dillard by allowing his attorney to argue that the Court could sentence him to as little as 21 years because the minimum sentence applicable to the felony assault conviction would be four instead of eight years. Mr. Dillard is simply mistaken that

---

[10] *See, e.g.* D.I. 63 ("I [am] asking if my sentence[] could be reduced to the 25 years which is the minimum of this case."); D.I. 95 (demonstrating that he believes the Court imposed 25 of the 33-year term of imprisonment as a minimum mandatory).

[11] 80 DEL. LAWS Ch. 321 (eff. July 19, 2016).

[12] Sentencing Hrg. Tr. 3-6. (D.I. 85).

[13] *Id.*

benefit was one due to him by law.

(13)     The sentencing provisions in effect at the time that a criminal act is committed are those applied when imposing a sentence for that act. Delaware courts need apply intervening ameliorative changes of sentencing statutes only when the General Assembly expressly provides for their retroactive application.[14]  Our Supreme Court has now expressly applied this principle when speaking to the 2016 changes to the Habitual Criminal Act.[15]

(14)     So, while not required by (and perhaps even an error of) law, this Court has since explained why such applications occurred at the nascent point when the parties and Court were reckoning with the handful of cases effected by what was, and remains, a truly unique statutory revision:[16]

> [S]uch agreements were permitted for just that small universe of habitual criminal cases pending disposition when the 2016 revisions to Delaware's Habitual Criminal Act were first enacted.  They were permitted for two reasons: (1) for the defendant, the potential resulting sentence was always either the same or better than the law in effect when the then-pending case

---

[14]   *See Fountain v. State*, 139 A.3d 837, 842-43 (Del. 2016) (Statutory revisions allowing for concurrent sentences in some circumstances do not apply to defendants whose crimes occurred before those changes because General Assembly did not expressly provide for their retroactive application.); *State v. Thomas*, 220 A.3d 257, 263-64 (Del. Super. Ct. 2019) (same).

[15]   *Garrett v. State*, 2022 WL 1639226, at *2 (Del. May 23, 2022) (citing *Wright v. State*, 2022 WL 499979, at *3 & n.14 (Del. Feb. 17, 2022) (the version of the habitual-offender statute that applies is the one in effect at the time that the defendant *committed* the offense for which he is being sentenced).

[16]   *See State v. Heath*, 2022 WL 16557804, at *2 (Del. Super. Ct. Oct. 31, 2022) (explaining the singular nature of the sentence review provisions of the revised Habitual Criminal Act).

started; and (2) application of the old law might foster needless review under new § 4214(f)—relief under which was application of the new habitual criminal provisions.[17]

(15)  The Court made it clear that it was sentencing Mr. Dillard with the lesser habitual enhancement in mind as the potential minimum in his case.[18]  Unfortunately for Mr. Dillard, the Court didn't find his felony assault to be one for which a minimum term should be imposed.[19]  Rather, the Court found that even if Mr. Dillard's status as a statutory habitual criminal wasn't factored in at all, the imposition of eight years of imprisonment for his knife attack on M.S.—a "young woman who was doing nothing more [than] trying to save her sister's life"—was appropriate.[20]

(16)  Mr. Dillard is not serving an illegal sentence.  So, he is due no relief under this Court's Criminal Rule 35(a) and that motion is **DENIED**.[21]

---

[17]  *State v. Daniels*, 2022 WL 2733509, at *1 n.9 (Del. Super. Ct. July 13, 2022), *aff'd*, 2023 WL 176964 (Del. Jan. 12, 2023) (citing Mr. Dillard's case as an example).

[18]  Sentencing Hrg. Tr. 6, 34-35.

[19]  *Id*. at 34-35.

[20]  *Id.*

[21]  All that said, the Court recognizes that clarification in Mr. Dillard's sentencing order to denote the specific version and provision of the Habitual Criminal Act that was applied to his second-degree assault conviction is appropriate.  The Court will issue a modified sentencing order herewith.

## MR. DILLARD'S RULE 35(b) MOTION (D.I. 96)[22]

(17)   Mr. Dillard also docketed a simultaneous motion under Superior Court Criminal Rule 35(b)[23] requesting reduction of his prison term either now or once he demonstrates rehabilitation.[24]

(18)   When considering motions for sentence reduction, "this Court addresses any applicable procedural bars before turning to the merits."[25] Mr. Dillard previously filed a Rule 35(b) motion requesting reduction of the 33-year unsuspended portion of his Level V term or that "[i]f [his] sentence[] can't be modified or reduced can [he] be put under review after a sum of [his] time."[26] That first and timely motion was considered on its merits and denied.[27]

(19)   He has now docketed another application asking for the same relief.   Again, when considering a Rule 35(b) motion the Court must first

---

[22]   Mr. Dillard used the same cover page and title for his two distinct motions that were filed in a single package. *See* D.I. 98 (explaining Mr. Dillard's filings).

[23]   Super. Ct. Crim. R. 35(b) (providing that, under certain conditions, the Court may reduce a sentence of imprisonment on an inmate's motion); *Jones v. State*, 2003 WL 21210348, at *1 (Del. May 22, 2003) ("There is no separate procedure, other than that which is provided under Superior Court Criminal Rule 35, to reduce or modify a sentence.").

[24]   Rule 35(b) Motion 1-2.

[25]   *State v. Redden*, 111 A.3d 602, 606 (Del. Super. Ct. 2015).

[26]   D.I. 63.

[27]   D.I. 66.

address any applicable procedural bars.[28] Only if the movant clears those hurdles, may the Court consider the merits of his reduction or modification request.[29]

(20) Mr. Dillard attempts to address Rule 35(b)'s time bar. But he says nothing of the fact that this is his second request for the same sentence-reduction relief. The Court must.[30]

(21) As our Supreme Court and this Court have consistently held, Rule 35(b) prohibits consideration of repetitive requests for sentence reduction or modification.[31] There is no exception to the repetitive-motion bar.[32] "And a motion is repetitive under Rule 35(b) whenever it is preceded by an earlier Rule 35(b) motion, even if the subsequent motion raises new arguments or suggests somewhat different relief."[33]

---

[28] *See State v. Brown*, 2022 WL 14781911, at *1 (Del. Super. Ct. Oct. 26, 2022), *aff'd*, 2023 WL 1808446 (Del. Feb. 7, 2023) (""When addressing any species of sentencing reduction or modification request, the Court first identifies the specific procedural mechanism the inmate attempts to invoke; it must then determine whether that mechanism is available under the circumstances.") (cleaned up).

[29] *Redden*, 111 A.3d at 606.

[30] *State v. Reed*, 2014 WL 7148921, at *2 (Del. Super. Ct. Dec. 16, 2014); *State v. Culp,* 152 A.3d 141, 145-47 (Del. 2016) (instructing that this Court cannot ignore the Rule 35's plain language, its procedural bars and requirements, or established precedent interpreting the rule).

[31] *Culp*, 152 A.3d at 145; *Redden,* 111 A.3d at 608–09.

[32] *Culp*, 152 A.3d at 144; *Redden,* 111 A.3d 608–09.

[33] *State v. Wenzke*, 2023 WL 3676894, at *4 (Del Super. Ct. May 25, 2023) (cleaned up) (citing *Culp*, 152 A.3d at 144).

(22) Accordingly, the Court must **DENY** Mr. Dillard's second Rule 35(b) application for sentence reduction because it is repetitive and again seeks a form of relief not available under that rule or applicable Delaware law.[34]

**SO ORDERED this 8th day of November, 2024.**

/s/ *Paul R. Wallace*

Paul R. Wallace, Judge

Original to Prothonotary

cc: Mr. Krishan D. Dillard, *pro se*
Anna M. Hadlock, Deputy Attorney General
Renee L. Hrivnak, Deputy Attorney General
Cari A. Chapman, Deputy Attorney General
Investigative Services Office

---

[34] *See id.* (a sentence-reduction movant can't "'ask[] the Court to monitor his sentence and release him upon some future potential happening'—or put another way, 'to engage in a form of judicial parole' . . . [t]hat exercise is not sanctioned by Rule 35(b) . . . nor any other of this Court's rules of criminal procedure"). As the Court explained recently in a similar case, the only avenue for the relief Mr. Dillard seeks—reduction of his prison term—on the grounds he raises— rehabilitative efforts—is an application brought at the proper time and with the proper support by the Department of Correction under 11 *Del. C.* § 4217 or via some form of executive clemency. *See State v. Chambers*, 2024 WL 3792416, at *3 n.22 (Del. Super. Ct. Aug. 13, 2024).